*Moran Perry v. Asphalt & Concrete Services, Inc.*, No. 27, September Term 2015, Opinion by Greene, J.

**CIVIL LAW — INSURANCE — EVIDENCE**

Evidence of lack of insurance coverage is irrelevant and inadmissible in a negligent hiring claim where that evidence does not establish the proximate cause of the complaining party's injuries.  Under these circumstances, it was legal error to admit irrelevant evidence of lack of insurance.  The admission of this evidence prejudiced the jury's verdict because it was reasonably probable that the jury considered this evidence in its determination of liability.

Circuit Court for Prince George's County
Case No. CAL 12-12730
Argued: November 6, 2015

IN THE COURT OF APPEALS
OF MARYLAND

No. 27
September Term, 2015

MORAN PERRY

v.

ASPHALT & CONCRETE SERVICES, INC.

Barbera, C.J.,
Battaglia,
Greene,
Adkins,
McDonald,
Watts,
Harrell, Jr., Glenn T. (Retired,
        Specially Assigned),

JJ.

Opinion by Greene, J.

Filed: March 28, 2016

In the instant case we are asked to address whether evidence of insurance or lack of insurance is admissible to establish a negligent hiring claim. At the core of this case is whether the admission of this evidence likely influenced the jury's determination of liability for Perry's injuries. Petitioner, Moran Perry ("Perry") filed suit against Respondent, Asphalt Concrete Services, Inc. ("ACS"), Higher Power Trucking, LLC ("Higher Power") and William Johnson, II ("Johnson") for injuries he suffered when he was struck by a dump truck owned by Higher Power and operated by Johnson. The Circuit Court for Prince George's County allowed into evidence witness testimony regarding Johnson's lack of liability insurance coverage at the time of the accident. We conclude that this was legal error. Evidence of lack of insurance coverage had no causal relationship to the injuries suffered by Perry and was thus irrelevant to both the claims of negligent hiring and ordinary negligence.

## FACTUAL AND PROCEDURAL BACKGROUND

On April 28, 2009, Perry was crossing the intersection of Opposumtown Pike and Thomas Johnson Drive in Frederick, Maryland when he was struck by a 2007 Kenworth dump truck operated by Johnson, and owned by Higher Power. As a result of the accident, Perry suffered head trauma and rib fractures. ACS had hired Higher Power to haul asphalt and stone to St. John's Regional Catholic Church, where ACS was paving a children's play pad. A preliminary investigation by Officer Joseph Palkovic revealed that neither Johnson nor Higher Power had liability insurance covering the truck because of a lapse in payment

on the insurance policy.[1]

On April 11, 2012, Perry filed his initial complaint in the Circuit Court for Prince George's County. Perry alleged negligence against Higher Power, Johnson, and ACS.[2] He also alleged that ACS was negligent in its hiring and supervision of Higher Power. After the completion of discovery, ACS filed a Motion for Summary Judgment on August 30, 2013 contending there was no dispute that Johnson and ACS did not have an employer-employee relationship. ACS also contended that even if it should have known of Johnson's license and insurance status, this was not the proximate cause of the accident.[3] The trial court denied ACS's Motion for Summary Judgment. On September 20, 2013, ACS filed a motion *in limine* seeking to exclude evidence that Johnson had a suspended license and that the truck was uninsured at the time of the accident. With respect to lack of insurance, ACS argued that it was inadmissible because "[l]iability insurance, based on [Maryland Rule] 5-411, generally speaking can't be admitted [] on the issue of proximate cause of an accident or negligence."

---

[1] The preliminary investigation also revealed that Johnson had a suspended driver's license and the registration on the truck had expired. The intermediate appellate court did not address the admissibility of the evidence of the driver's license and registration because these issues "may not arise in a new trial." *Asphalt & Concrete Servs., Inc. v. Perry*, 221 Md. App. 235, 266 n.6, 108 A.3d 558, 577 n.6 (2015). Perry appeals only the issue of the admissibility of evidence with regard to liability insurance.

[2] Neither Higher Power nor Johnson responded to the initial complaint.

[3] As ACS describes and we later discuss, proximate cause is a necessary element in actions of negligence, including a claim of negligent hiring. ACS asserts that the element of proximate cause is not satisfied because "the fact that someone is uninsured . . . does not make it more likely than not that they will be involved in an accident."

2

The court decided to reserve its ruling on this motion until it had "more of a factual basis," indicating that if the evidence of insurance came in, it would be "strictly [for] the limited purpose of the negligent hiring and whether a reasonable hirer would have determined that and acted accordingly."

On September 27, 2013, Perry filed a "Motion for Leave to File First Amended Complaint" to reflect that Higher Power "was not in good standing according to the publicly available records of the Maryland State Department of Assessments and Taxation at the time of the accident." Thus, Perry sought to dismiss Higher Power as a separately named defendant because Higher Power "was simply a trade name under which [Johnson] was unlawfully operating his dump truck business." The proposed first amended complaint alleged the same counts of negligence and negligent hiring but substituted Johnson for Higher Power in the negligent hiring count. The court granted Perry's motion.[4] The first amended complaint contained the following assertions:

**COUNT I (Negligence – All Defendants)**
***
11. Johnson, as the operator of the truck which struck Perry, at all times material to this Complaint, was the agent, servant and/or employee of ACS, acting at the direction and control of ACS and for the financial benefit of ACS. As such, ACS and Johnson owed duties of care to Perry and members of the public at large to lawfully operate the truck in a safe and reasonable manner.

---

[4] Proceeding on the fact that Higher Power was essentially Johnson, and vice versa, the effect of the amended complaint was to remove Higher Power as a named defendant and to treat Johnson and Higher Power as one and the same. Even though Higher Power was no longer a party to the case, at trial, witnesses testified to their dealings with Higher Power as an entity. For purposes of clarity, we refer to Higher Power and Johnson separately.

3

12. On or about April 28, 2009, ACS and Johnson breached the duties of care owed to Perry by (1) failing to operate the vehicle in a reasonably safe manner; (2) failing to travel at a safe speed; (3) failing to stop or avoid Perry while he was a pedestrian; (4) operating the vehicle in violation of Maryland law regarding registration, licensure and insurance; and (5) being otherwise careless while operating his vehicle.

13. As a result of ACS's and Johnson's breaches of the duties of care owed to Perry, he sustained substantial damages.

\*\*\*

### COUNT II (Negligent Hire and Supervision – ACS)

\*\*\*

15. At all times material to this Complaint, ACS hired Johnson to act for its financial benefit and Johnson was subject to ACS's direction and control. As such, ACS owed Perry and members of the public at large [a duty] to take reasonable measures, both at the time it hired Johnson and throughout its employment of Johnson, to ensure that Johnson conducted himself in [a] lawful and prudent manner while operating vehicles on behalf of ACS. Those duties include, but are not limited to, ACS's duty to make sure that Johnson was a properly licensed driver, operating a lawfully registered and insured vehicle.

16. On or about April 28, 2009, ACS breached the duties of care it owed to Perry by employing Johnson, who was not a properly licensed driver and was unlawfully operating an unregistered and uninsured dump truck which struck Perry.

17. As a result of ACS's breaches of the duties of care owed to Perry, he sustained substantial damages.

\*\*\*

Trial began on October 7, 2013. Perry was the first witness. He testified about the extent of his injuries, the effect the injuries had on his everyday activities, and his medical treatment following the accident. After Perry's testimony, in a conversation with the court

4

that occurred outside the presence of the jury, ACS repeated the argument it made in its September 20, 2013 motion *in limine* that evidence of lack of insurance through the testimony of Officer Joseph Palkovic should not be admitted:

> [THE COURT]: Well, one of the problems I have had in thinking this through is this. I think part of what you said is a hundred percent correct because really before the jury can reach a verdict on the negligent hiring they first have to reach a verdict on the negligence. If the jury finds [Johnson] was not negligent in the operation of that vehicle then obviously . . . . how could there be a negligent hiring. But the two are being tried together . . . . So that's the issue I have is that I think it's relevant to the hiring count, the negligent hiring count, but not particularly to the negligence.
>
> [DEFENSE COUNSEL]: May I? Your Honor, you're way ahead. The issue first is whether or not he's our employee or an independent contractor.
>
> [THE COURT]: Well, yeah, that's of course the big issue.
>
> [DEFENSE COUNSEL]: That's the prime - - yeah, that's the huge issue. And if we get in evidence through a police officer that says this guy was uninsured, the bell's rung, the prejudice is done, and we've got a mistrial on our hands . . . .
>
> [THE COURT]: Well, no you don't get - - you wouldn't get a mistrial granted because that's what I was just about to say. I mean there might be a curative instruction right now . . . . I mean it's only admissible against [ACS] - - if they find that Johnson, II was an agent or an employee, only then is it admissible for the negligent hiring.
>
> [DEFENSE COUNSEL]: Right. But there's no basis - - there's no foundation for that to be introduced at this point.
>
> [THE COURT]: What do you mean?
>
> [DEFENSE COUNSEL]: There's no evidence that he was our employee. So the jury's going to hear it and assume that - - you know, it was introduced that he's our driver and - -
>
> [THE COURT]: Well, I assume they'll tie it up, that there will be evidence that it (sic) was the employee.

5

[DEFENSE COUNSEL]: I mean - - Your Honor?

[THE COURT]: I understand you say he's not, but their evidence - - because they say he is . . . . I mean the rule or the principle exists to prevent the jury from knowing that there is insurance on the theory that it would encourage - - so what is the point of not having insurance . . . . [Perry is] trying to get in the opposite[,] that there was no insurance.

[DEFENSE COUNSEL:]: Right. In the effort to show that we are the insured party . . . . Which is totally inadmissible . . . . the implication is that if [Johnson] doesn't that we do.

[THE COURT]: Well, no that's . . . [t]o say someone didn't have it doesn't mean to say everyone else has it . . . . That's not a logical inference.

[DEFENSE COUNSEL]: In this case he [Johnson] actually did have a policy of insurance. That's I guess the big issue. There was a policy of insurance. He did have one through Progressive, and it covered this accident. It just simply lapsed for nonpayment a month before. What does the fact that he - - the insurance lapsed for nonpayment have to do with any issue in this case?

[THE COURT]: When was he hired to do this?

[PLAINTIFF'S COUNSEL]: This particular job? Two weeks before April 28th. They had an ongoing relationship.

[THE COURT]: So a check would have revealed the insurance had lapsed.

[DEFENSE COUNSEL]: Wait a minute. How would a check reveal that his insurance had lapsed? To us? I can't check your insurance to find out whether or not it's valid.

[THE COURT]: Well, you can ask me. Show me your insurance.

[DEFENSE COUNSEL]: And he did. He gave us the policy and said it was valid.

[PLAINTIFF'S COUNSEL]: Well, no, he never provided any proof of insurance at all until after the accident. And that's the testimony from the ACS employees. And that's what ACS's file indicates. And also, what we're doing here is . . . establishing it right through the ACS employees' testimony that, look, hey, when we hire a driver we check two things: he's got a valid license and he's got insurance [] And what I'm trying to demonstrate is they violated their own policies when they hired this guy because he didn't produce any proof of insurance . . . .

6

The court decided that Perry should call ACS's employees to establish a foundation for an employment relationship before it would rule on the admissibility of the evidence of lack of insurance "[b]ecause there's too many factual disputes here."

Burt Maggio ("Maggio"), President of ACS at the time of the accident, was next to testify. Perry produced a fax cover sheet dated April 3, 2009 and asked Maggio to read a message on the sheet. Upon ACS's objection, the parties approached the bench and the following colloquy ensued:

> [DEFENSE COUNSEL]: It was identified. I understand, but it wasn't moved into evidence, so I didn't want him reading from it. But the more important thing is, the issue as I understand what they're trying to prove is the fact that Higher Power didn't have liability insurance. This demonstrates that there's (unintelligible) to produce a W-9. And a W-9 is a certificate of liability insurance.
>
> [THE COURT]: All right. I'm missing something.
>
> [DEFENSE COUNSEL]: There's no duty to require that of an independent contractor.
>
> [THE COURT]: Well, the issue is - - the date here is April 3rd?
>
> [DEFENSE COUNSEL]: Right.
>
> [THE COURT]: When was the accident?
>
> [PlAINTIFF'S COUNSEL]: April 28th. And this was the second request. The original request was on March 6th, and then we can show all the job tickets of them working with this (unintelligible).
>
> [THE COURT]: Why were they requesting this?
>
> [DEFENSE COUNSEL]: That was part of their policy to request it . . . . [w]hether we request it or not, it is a requirement in Maryland - - it's the law that [a] trucking company has, one, liability insurance, and two, uses licensed drivers. We're not required to enforce that law.
>
> [THE COURT]: All right. I'm going to overrule your objection.

7

Maggio read the message on the fax cover sheet to the jury in open court: "Hi. On March 11th, I sent you a request for a revised W-9 and certificate of liability insurance. I still have not received either of these from you. Please send them to us ASAP. Thanks, Samantha."[5] Maggio stated that prior to using a truck operator on a project, ACS would request the truck operator provide, among other things, a certificate of liability insurance because the State of Maryland requires that vehicles be insured and "to make sure that they [the truck operators] had insurance." Maggio was then asked to read into the record some handwritten notes contained in the April 3 fax cover sheet: "Higher Power. Still have not received anything from them. Second request. I called and LM [left message] too." He further stated that ACS required proof of insurance because some of their customers required them to show proof of insurance.[6]

Next, Maggio testified to the nature of ACS's dealings with Higher Power. Based on how many trucks it needed for a project and how many hours it needed the trucks to operate, an ACS dispatcher would call various hauling companies to determine if they were available. ACS compensated Higher Power on an hourly basis. According to Maggio, a truck operator's "clock starts" when he or she picks up the first load from the materials supplier and heads to the job site. He pointed out that the only instruction ACS would give to truck

---

[5] Samantha Mentzer worked in the ACS office at the time of the accident.

[6] Prior to his position as President of ACS, Maggio was president of another paving and concrete business, O'Leary Asphalt. Maggio stated that O'Leary Asphalt also required proof of insurance for vehicles on job sites for the same reasons as ACS.

operators was where to dump the material after they arrived at the job site. A truck operator would be free to go if the load dropped off satisfied the requirements of a project, otherwise, an ACS dispatcher or superintendent would ask them to go back to the supplier to pick up another load. Further, ACS does not dictate the route a truck operator uses to get to a site. Truck operators had the discretion to go to McDonald's for lunch, take a cigarette break, or do another job prior to completing ACS's job. Maggio also stated that ACS reserved the right to dock a truck operator's hourly pay if it felt the operator took too long to complete a job.[7]

On cross-examination, Maggio stated that in April 2009, ACS had fifteen employees and that Johnson was not an employee, but instead worked for Higher Power. He stated that ACS employees received a salary, health care benefits, 401(k) participation, paid holidays, and other perks such as free driveway repairs. Johnson did not receive any of these benefits from ACS.

After Maggio's testimony, Perry made a request to call Officer Joseph Palkovic as the next witness and the following exchange occurred outside the presence of the jury:

[DEFENSE COUNSEL]: I mean, Your Honor, we still have the same issue with the insurance . . . .

[THE COURT]: Well, you don't have the same foundation issue.

---

[7] Maggio gave the following example: If it takes a truck operator 2.5 hours to complete a 30 minute job and the operator says "hey, traffic was slow, the dispatcher would then get in his truck and try to find out, well, where did you go?" If a dispatcher discovered a truck operator is parked at McDonald's with an active load, ACS would not compensate for that time.

9

[DEFENSE COUNSEL]: In terms of employment? Is that what - -

[THE COURT]: Well, I mean, you don't think there's enough information to generate a genuine jury issue as to that [the existence of an employment relationship]?

[DEFENSE COUNSEL]: No, Your Honor. I do disagree that there is enough information . . . . Obviously we noted our objection[,] so that's obviously going to be subject to your ruling [].

The court, finding that there was now enough evidence to establish a foundation as to ACS and Johnson's employment relationship, and over ACS's objection, granted Perry's request. The jury returned to the courtroom.

Officer Palkovic testified that he responded to the scene of the accident on April 28, 2009, where Johnson identified himself as the driver who struck the person in the intersection. He stated that Johnson produced evidence of insurance. Over ACS's objection, the court allowed Officer Palkovic to testify that a further investigation revealed that the insurance policy on the truck Johnson drove was not valid due to a lapse in payment. On cross-examination, Officer Palkovic testified that he determined Higher Power was the owner of the truck.

Next, Perry called Blake Wood, project manager for ACS at the time of the accident. Mr. Wood stated that he requested Johnson's certificate of insurance and driver's license, and expected that the office manager would notify him if the paperwork was not received. He elaborated that he would not have hired Johnson without a certificate of insurance because it would be illegal and insurance is required.

10

Prior to resting his case, Perry called additional witnesses to testify on the subject of insurance. First, he called Samantha Mentzer, an ACS employee who worked in the front office at the time of the accident. She testified that her handwriting on the fax cover sheet introduced during Maggio's testimony read, "Higher Power, still have not received anything from them. Second request. I called and . . . left message too." Second, Perry called Diane Moses, a claims specialist with Progressive Insurance Company.[8] The court overruled ACS's objections, and allowed Moses to testify that Higher Power was listed as the insured party on the certificate of insurance providing comprehensive coverage for the 2007 Kenworth truck. She elaborated that this policy did not provide liability coverage and had been canceled on March 14, 2009 for non-payment. Based on her review of the insurance file, Progressive did not provide ACS with documentation regarding the policy prior to the date of the accident. Progressive also did not send documentation to ACS regarding the policy's lapse on March 14.

After Perry rested his case and while the jury was excused from the courtroom, ACS moved that Perry's requested jury instruction regarding the requirement of liability insurance[9] be stricken. ACS's attorney explained that "we shouldn't be even discussing liability insurance because it's not relevant to the issue of whether or not . . . Mr. Johnson was

[8] On October 7, 2013, ACS filed a motion *in limine* seeking to preclude testimony of Diane Moses anticipating that "Plaintiff will attempt to elicit testimony from Ms. Moses that there was no insurance on the 2007 Kenworth dump truck as of April 28, 2009."

[9] Perry based this instruction on Md. Code (1977, 2012 Repl. Vol.), §§ 17-103 and 17-107 of the Transportation Article.

negligent." The court then called the jury back into the courtroom to hear closing arguments.

The court gave the jury, in pertinent part, the following instructions regarding the law, effectively overruling ACS's request to strike Perry's proposed jury instruction:

> The violation of a statute which is a cause of plaintiff's injuries or damages is evidence of negligence. I'm going to read you some motor vehicle statutes that if you find [they] were violated and the violation was the cause of the injuries, it is evidence of negligence . . . . *Motor vehicles must be covered by a liability insurance policy which provides for the applicable amount of coverage required by Maryland law. A person who knows or has reason to know that a motor vehicle is not covered by a liability insurance policy as required may not drive the vehicle, or if he is the owner of the vehicle knowingly permit another person to drive it.*
>
> All right, negligence is deemed something that a person using reasonable care would not do, or not doing something that a person using reasonable care would do. Reasonable care means that caution (indiscernible) skill a reasonable person would use under similar circumstances.
>
> An employer has a duty not to employ any person who poses an unreasonable risk to other persons who would foreseeably come into contact with that employee because of the employment relationship.
>
> An employer who breaches this duty is responsible for any foreseeable injuries or damages caused by the conduct or actions of any such employee.
>
> For the plaintiff to recover damages, the defendant's negligence must be a cause of the plaintiff's injury.
>
> ***
>
> All right, in the event that you find for the plaintiff on the issue of liability, then you must go on to consider the question of damages.

(emphasis added). The jury returned a verdict in favor of Perry. The verdict sheet indicated that the jury found: (1) Johnson was the agent, servant, and/or employee of ACS; (2) ACS was negligent in its hiring of Johnson; (3) Johnson was negligent in failing to properly

12

operate his vehicle on April 28, 2009, and that his negligence was a proximate cause of the injuries to Perry; and (4) Perry was not contributorily negligent. It awarded Perry $29,500 for past medical expenses and $500,000 for pain and suffering, physical impairment, diminished quality of life, and inconveniences in the past and future.

On October 22, 2013, ACS filed a "Motion for Judgment Notwithstanding the Verdict or, in the alternative, a Motion for New Trial." The trial court denied this motion on November 7, 2013. ACS appealed to the Court of Special Appeals, which, in a reported opinion, reversed the judgment entered in favor of Perry.[10] The intermediate appellate court concluded that "[b]ecause there was no causal link shown between Mr. Johnson's lack of insurance and the accident, [] lack of insurance was not relevant to the claim of negligent hiring, and the court erred in admitting it." *Asphalt & Concrete Servs., Inc. v. Perry*, 221 Md. App. 235, 266, 108 A.3d 558, 576 (2015).

---

[10] ACS presented four questions on appeal to the intermediate appellate court:

1. Did the [C]ircuit [C]ourt err in admitting evidence of Mr. Johnson's suspended driver's license, expired vehicle registration, negative driving record, and lack of liability insurance?

2. Did the [C]ircuit [C]ourt err in denying ACS's motion to dismiss Mr. Perry's initial complaint?

3. Did the [C]ircuit [C]ourt abuse its discretion in permitting Mr. Perry to amend his initial complaint after the statute of limitations had expired?

4. Did the court err in denying ACS's motions for judgment?

*Asphalt & Concrete Servs., Inc. v. Perry*, 221 Md. App. at 241, 108 A.3d at 562.

On April 17, 2015, this Court granted a writ of certiorari, *Perry v. Asphalt & Concrete Servs.*, 442 Md. 515, 113 A.3d 624 (2015), to answer the following question:

> Did the trial court commit an abuse of discretion by admitting the evidence of insurance?

As explained below, we shall hold that, for the purposes of the instant case, evidence of lack of insurance coverage was inadmissible because it was not the proximate cause of the complaining party's injuries. Accordingly, we shall affirm the judgment of the Court of Special Appeals for the reasons explained in this opinion.

## STANDARD OF REVIEW

Our standard of review on the admissibility of evidence depends on whether the "ruling under review was based on a discretionary weighing of relevance in relation to other factors or on a pure conclusion of law." *Parker v. State*, 408 Md. 428, 437, 970 A.2d 320, 325 (2009) (quoting *J.L. Matthews, Inc. v. Md. Nat'l Capital Park & Planning Comm'n*, 368 Md. 71, 92, 792 A.2d 288, 300 (2002)). Generally, "whether a particular item of evidence should be admitted or excluded is committed to the considerable and sound discretion of the trial court" and reviewed under an abuse of discretion standard. *Ruffin Hotel Corp. of Md., Inc. v. Gasper*, 418 Md. 594, 619, 17 A.3d 676, 691 (2011) (internal quotation marks omitted). However, we determine whether evidence is relevant as a matter of law. *State v. Simms*, 420 Md. 705, 725, 25 A.3d 144, 156 (2011). The *de novo* standard of review applies "[w]hen the trial judge's ruling involves a legal question." *Parker*, 408 Md. at 437, 970 A.2d at 325. Although trial judges have wide discretion "in weighing relevancy in light of

14

unfairness or efficiency considerations, trial judges do not have discretion to admit irrelevant evidence." *Simms*, 420 Md. at 724, 25 A.3d at 155.

Even where there is error, this Court will not reverse a lower court's judgment for harmless error. *Crane v. Dunn*, 382 Md. 83, 91, 854 A.2d 1180, 1185 (2004). Rather, the complaining party must demonstrate that the error was prejudicial, or in other words, "the error was likely to have affected the verdict below." *Id.* "Courts are reluctant to set aside verdicts for errors in the admission or exclusion of evidence unless they cause substantial injustice." *Brown v. Daniel Realty Co.*, 409 Md. 565, 584, 976 A.2d 300, 311 (2009) (quoting *Flores v. Bell*, 398 Md. 27, 34, 919 A.2d 716, 720 (2007)). In these circumstances, we have consistently stated that the appellate inquiry focuses on "not the possibility, but the probability, of prejudice." *Crane,* 382 Md. at 91, 854 A.2d at 1185 (citing *State of Md. Deposit Ins. Fund Corp. v. Billman*, 321 Md. 3, 17, 580 A.2d 1044, 1051 (1990)).

## DISCUSSION

Neither party disputes the trial court's ruling that the evidence of lack of insurance was not relevant to the claim of ordinary negligence. Perry claims that the evidence of Johnson's lack of insurance demonstrates it was more likely than not that ACS violated its duty to use reasonable care in hiring Johnson because it knew or should have known of Johnson's inability to lawfully operate a dump truck. In response, ACS contends that admission of this evidence is contrary to Maryland Rule 5-411 which prohibits the admission of evidence of insurance to prove fault or liability and is irrelevant to the claim of negligent

15

hiring.  We shall discuss the admissibility of evidence of insurance generally and as it pertains to a party's liability for negligent hiring.

## Relevance of Liability Insurance Generally

Under Maryland Rule 5-411, "[e]vidence that a person was or was not insured against liability is not admissible upon the issue [of] whether the person acted negligently or otherwise wrongfully."  Evidence of liability insurance may, however, be admissible if "offered for another purpose, such as proof of agency, ownership, or control, or bias or prejudice of a witness." Md. Rule 5-411.  Derived from Federal Rule of Evidence 411, Rule 5-411 is designed to prevent the undue prejudice that may result when liability insurance is admitted because "the inference of fault from the fact of insurance coverage is a tenuous one, as is its converse."  FED. R. EVID. 411 Notes of Advisory Committee.  This rationale is consistent with the general framework of Maryland Rules 5-402 and 5-403 which state, respectively, that "[e]vidence that is not relevant is not admissible" and "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."  In other words, when evidence of insurance is being offered for a purpose not prohibited by Rule 5-411, the court has broad discretion to admit or exclude evidence under the general principles of relevancy and Rule 5-403.  2 JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S FEDERAL EVIDENCE, § 411.02 (Mark S. Brodin, ed., Matthew Bender 2d ed. 1997).

16

## Establishing Liability for Negligent Hiring

An important issue at trial was determining the relationship between Johnson and ACS: was Johnson (1) an agent, servant, and/or employee of ACS (i.e., in an employment relationship where ACS was the employer) or (2) an independent contractor? The type of relationship is significant, because it would impact any determination of liability. Under the doctrine of *respondeat-superior*, an employer is vicariously liable for the acts of its employee, within the scope of employment, even if the employer does not commit any negligent acts.[11] *See Barclay v. Briscoe*, 427 Md. 270, 282–83, 47 A.3d 560, 567–68 (2012). An employment relationship exists when the servant is subject to the master's control. *Globe Indem. Co. v. Victill Corp.*, 208 Md. 573, 581, 119 A.2d 423, 427 (1956). Contrast the employer relationship with that of an independent contractor: "[p]ersons who render service but retain control over the manner of doing it are not servants," but independent contractors. *Id.* When one engages an independent contractor, one "is not responsible for incidental negligence while such agent is conducting the authorized transaction." *Gallagher's Estate v. Battle*, 209 Md. 592, 602, 122 A.2d 93, 98 (1956). There are exceptions, however, to the general rule that one who hires an independent contractor is ordinarily not liable for that contractor's negligence. For example, an employer is liable for the acts of an independent contractor under the theory of negligent hiring if the

---

[11] The doctrine is based on the agency principle that "[a] master is subject to liability for the torts of his [or her] servants committed while acting in the scope of their employment." RESTATEMENT (SECOND) OF AGENCY § 219 (AM. LAW INST. 1958).

harm is caused by "some quality in the contractor which made it negligent for the employer to entrust the work to him." RESTATEMENT (SECOND) OF TORTS §411 cmt. b (AM. LAW INST. 1965).

At trial, the jury found Johnson to be the agent, servant and/or employee of ACS. Therefore, even if Perry failed to prove the negligent hiring count, ACS was liable under the doctrine of *respondeat-superior*. The trial court found there was enough evidence presented for the jury to determine the type of employment relationship that existed between Johnson and ACS. As we will later discuss, it is likely that the admission of the evidence of lack of insurance impacted the jury's verdict on this issue and as a result, the determination of liability.

To determine whether evidence is relevant to a claim of negligent hiring, we must analyze the elements of the claim. For a cause of action based in negligence, such as negligent hiring, "a plaintiff must prove the existence of a duty owed by a defendant to him (or to a class of which he is a part), a breach of that duty, a legally cognizable causal relationship between breach of duty and the harm suffered, and damages." *Cramer v. Housing Opportunities Comm'n of Montgomery Cty.*, 304 Md. 705, 712, 501 A.2d 35, 39 (1985). One is negligent if he or she breaches a duty he or she owes to another. "[T]hat negligence is actionable [,however,] only if it is a proximate cause of the damage." *Cramer*, 304 Md. at 712–13, 501 A.2d at 39. Specifically, to establish liability in a negligent hiring claim, "the plaintiff must prove two links in the causal chain." *Cramer*, 304 Md. at 713, 501

A.2d at 39. First, the plaintiff must show that the failure of an employer to undertake a reasonable inquiry resulted in the contractor's hiring. *Id.* Next, even "if a negligent hiring is shown, the plaintiff still must prove that the hiring was a proximate cause of the [plaintiff's] injury." *Id.* As we look to the elements of the claim, we keep in mind that relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Md. Rule 5-401.

## A. Negligent Hiring: Employer's Duty

Generally, an employer has a duty "to use reasonable care to select employees competent and fit for the work assigned to them and to refrain from retaining the services of an unfit employee" regardless of whether one engages an agent or independent contractor.[12] *Henley v. Prince George's Cty.*, 305 Md. 320, 336, 503 A.2d 1333, 1341 (1986). This duty extends to "members of the public who would reasonably be expected to come into contact" with the person or persons hired. *Id.* Truck drivers are reasonably expected to come into contact with pedestrians and other motorists. Thus, ACS owed a duty of reasonable care to those who came into contact with Johnson while he was transporting materials at the request of ACS.

---

[12] While most claims of negligent hiring or retention arise in a context where the employer-employee relationship is undisputed, we noted in *Evans v. Morsell* that "the applicable principles [of negligent hiring or retention] appear to be the same regardless of whether the employer hires an employee or an independent contractor to deal with his customers." 284 Md. 160, 166 n.3, 395 A.2d 480, 484 n.3 (1978).

Both Perry and the intermediate appellate court cite *Puckrein v. ATI Transport, Inc.* for the proposition that lack of liability insurance is relevant to the issue of whether ACS employed a competent person to work as a truck driver. 897 A.2d 1034 (N.J., 2006). In *Puckrein*, the New Jersey Supreme Court concluded that evidence of a waste disposal company's failure to verify a truck company's insurance coverage was relevant to the truck driver's competence. Because New Jersey law requires every owner of a motor vehicle to maintain motor vehicle liability insurance coverage, insurance is "the *sine qua non* to the transport of goods on the roadways." *Puckrein*, 897 A.2d at 1043. *See* N.J. STAT. ANN. 39:6B-1 (West 2012). Consequently, evidence of insurance was relevant to the driver's competence "to haul waste and recyclables across state lines." *Puckrein*, 897 A.2d at 1043. Citing *Puckrein*, the intermediate appellate court stated:

> ACS employees appeared to agree that they were "not allowed to" have truck operators who did not produce insurance information "because of the nature of the work" they did. Accordingly, under the circumstances of this case, Mr. Johnson's lack of liability insurance was relevant to whether ACS employed a competent person.

*Asphalt & Concrete Servs., Inc*., 221 Md. App. at 260–61, 108 A.3d at 573. The Court of Special Appeals noted, however, that "[this] is not the end of the inquiry." *Asphalt & Concrete Servs., Inc*., 221 Md. App. at 261, 108 A.3d at 573. "To be relevant to the claim of negligent hiring, the employer's negligence in hiring someone with no liability insurance must be the proximate cause of Mr. Perry's injuries." *Asphalt & Concrete Servs., Inc.*, 221 Md. App. at 261, 108 A.3d at 573–74. We agree.

20

Like New Jersey, Maryland requires vehicles to be covered by liability insurance. Transportation Article § 17-103. The purpose of this law "is to ensure that those who own and operate motor vehicles registered in the State are 'financially able to pay compensation for damages resulting from motor vehicle accidents.'" *Enterprise Leasing Co. v. Allstate Ins. Co.*, 341 Md. 541, 549, 671 A.2d 509, 514 (1996) (quoting *Pa. Nat'l Mut. Cas. Ins. Co. v. Gartelman*, 288 Md. 151, 154, 416 A.2d 734, 736 (1980)). ACS hired Higher Power for the specific purpose of transporting materials to job sites. There was testimony from ACS that its policy and the policy of other companies in the industry is to make sure the truck drivers that are hired maintain insurance coverage on their vehicles. This policy is in place to ensure compliance with the law. The evidence at trial showed that ACS reached out to Higher Power twice to verify its insurance coverage. It follows that a trucking company or individual that does not have insurance coverage on its vehicles lacks one of the qualifications necessary to be "competent" for the job of hauling supplies. Clearly, this evidence is relevant to the issue of whether ACS breached its duty when it hired Higher Power for a job, despite never receiving proof of liability insurance**.**

### B. Negligent Hiring: Causation

Next, we discuss the causation element of a negligent hiring claim. As the intermediate appellate court recognized, the negligent hiring must be the proximate cause of Perry's injury to be relevant to a negligent hiring claim. *Asphalt & Concrete Servs., Inc.*, 221 Md. App. at 261, 108 A.3d at 573–74. Similarly, the crux of ACS's argument focuses on

21

proximate cause. It argued that for an employer to be liable under a negligent hiring claim, the very quality that renders an employee "incompetent" must be the cause of the harm. Perry cites *Snowhite v. State, Use of Tennant*, 243 Md. 291, 221 A.2d 342 (1966) to support his contention that the evidence of Johnson's lack of insurance is admissible because it is "probative on the issue of whether ACS exercised due care in hiring Johnson to transport paving materials to its job site." As previously discussed, we agree that the evidence of lack of insurance is relevant to the standard of care exercised by ACS but note that Perry's arguments do not address the element of proximate cause.

Proximate cause consists of "1) a cause in fact, and 2) a legally cognizable cause." *Pittway Corp. v. Collins*, 409 Md. 218, 243, 973 A.2d 771, 786 (2009) (citation omitted). The "requirement that specific negligent conduct be a legally cognizable cause" involves a determination of whether it was foreseeable that the negligent act would cause the specific injury complained of in the case. *Henley*, 305 Md. at 333, 503 A.2d at 1340. Section 435(2) of the Restatement (Second) of Torts states that an "actor's conduct may be held not to be a legal cause of harm to another where after the event and looking back from the harm to the actor's negligent conduct, it appears to the court highly extraordinary that it should have brought about the harm."

In *Cramer v. Hous. Opportunities Comm'n of Montgomery Cty*, we held that evidence of the county housing commission's ready access to an employee's criminal and arrest records was admissible because the evidence was relevant to whether the commission was negligent

22

as well as to the issue of causation. 304 Md. 705, 501 A.2d 35 (1985). The Housing Opportunities Commission of Montgomery County ("Housing Commission") hired a building inspector despite the applicant's incomplete employment application, and without calling the applicant's listed references or conducting a criminal background check. At the time he was hired, the applicant had been charged with first degree burglary, sodomy, rape, and robbery. During a home invasion, the building inspector impermissibly learned that a particular residence, a townhouse rented from the Housing Commission, was occupied by a single mother and her two children. The building inspector later returned to the residence and raped the mother. We noted that "an employer may be guilty of negligence without incurring liability for the harm claimed." *Cramer*, 304 Md. at 718, 501 A.2d at 41. We provided the following example:

> An employer who hires an armed security guard without being possessed of any information concerning his fitness, and without conducting any investigation, is negligent. However, if it is a fact that the guard has an unblemished record and excellent reputation for trustworthiness, and that no potentially disqualifying information would have been obtained through the conduct of an appropriate inquiry, the employer has not been guilty of a *negligent hiring*.

*Id.* (emphasis in original). In the example above, an employer, although negligent, will not be liable to a third party for harms later committed by the security guard because a reasonable inquiry of the applicant's fitness for the job at the time of hiring would not have provided the employer with knowledge of any adverse tendencies. Similarly, "if [the building inspector] had been negligently hired but had assaulted a tenant of the [Housing Commission] previously

23

unknown to him, in a nearby shopping center and during off-duty hours, there would be no causal relationship between the hiring and the assault" because the hiring of the building inspector, though negligent, did not enable him to commit the wrongful act. *Cramer*, 304 Md. at 713, 501 A.2d at 39.

In *Snowhite v. State, Use of Tennant*, we concluded that the references to an employer's truck liability insurance policy did not constitute prejudicial error. 243 Md. 291, 221 A.2d 342 (1966). Clarence Henderson, employee of Harold Snowhite,[13] was delivering fuel in Snowhite's truck when he collided with decedent. The accident and decedent's death were the result of Henderson's negligent driving and driving while intoxicated. Henderson began drinking heavily two years prior to the accident and had a series of moving violations. During any given workday, Henderson frequented a bar on the same street where Snowhite's office was located. Testimony indicated that Snowhite went to this bar and asked Henderson to make a delivery on an occasion when Henderson appeared intoxicated. *Snowhite*, 243 Md. at 299, 221 A.2d at 346. There, we identified three exceptions to the general rule of law prohibiting evidence that a defendant is insured against liability:

> 1. Where the evidence is relevant to the cause of the accident or the liability of the defendant.
>
> 2. Where the reference to insurance is made by the defendant or his witness, in which event the testimony is admissible and is subject to legitimate comment and argument.

---

[13] Claims were brought against Harold Snowhite, individually and operating as Service Oil Company.

3. Where the evidence is relevant to an issue of which of two or more defendants was the employer of the operator of the vehicle involved.

*Snowhite*, 243 Md. at 302, 221 A.2d at 348 (citations omitted). At trial, Henderson testified to a statement made by Snowhite that if Henderson had additional accidents, Snowhite's company would no longer be able to retain its liability insurance. This Court concluded that this statement was admissible because it fell within the first exception to the general rule. Henderson's reference to insurance was in response to a question regarding Snowhite's knowledge of Henderson's driving record. Because Henderson's negligent driving and his driving while intoxicated were the very instrumentalities causing the accident, testimony about insurance was appropriate. Unlike *Snowhite*, in the case before us, lack of insurance coverage alone, without more, should not, and did not give ACS an indication of Johnson's abilities to operate a dump truck.

We hold that for evidence of insurance to be admissible in a negligent hiring claim, the evidence must also be relevant to the proximate cause of the plaintiff's injuries. Here, the negligent hiring of Higher Power/Johnson was not, as a matter of law, the proximate cause of the accident. As testimony indicated, it was ACS's policy to hire independent drivers with liability insurance, but ACS's failure to comply with its policy was not the cause of Perry's injuries. By analogy, an individual lawfully operating a vehicle covered by liability insurance may nonetheless have a long accident history due to negligent driving or poor driving skills. Just as it would be illogical to assert that this individual's driving was prudent on a particular occasion because he or she had liability insurance coverage at the time, one cannot conclude

25

the converse that an individual is a poor driver because insurance coverage had lapsed due to missed payments.

In contrast to *Snowhite* and *Cramer*, where it was determined that the employer knew or should have known about a "specific quality" of the independent contractor, and that quality was relevant to the cause of the plaintiff's injury, the alleged basis of the negligent hiring here, i.e., the lack of liability insurance coverage, was not the cause and effect of Perry's injury. Rather, this evidence may have been admissible if Perry demonstrated that the evidence of lack of insurance was relevant to ACS's actual or constructive knowledge of a specific quality of Johnson's that later contributed to Perry's injuries. Johnson's lack of liability insurance coverage was irrelevant to the claim of negligent hiring because it was not relevant to the proximate cause of Perry's injuries, and did not fall within any exceptions to the general rule against admitting evidence of insurance. Rule 5-402 provides that irrelevant evidence is not admissible. Thus, it was legal error for the trial court to admit the evidence of lack of insurance coverage.

Furthermore, the trial court's requirement that Perry establish a foundation of an employer-employee relationship prior to admitting evidence of lack of insurance did not address the element of proximate cause and was therefore, an improper basis for admitting the evidence. A court's "failure to consider the proper legal standard in reaching a decision constitutes an abuse of discretion." *Wilson-X v. Dep't of Human Res.*, 403 Md. 667, 675, 944 A.2d 509, 514 (2008) (citing *Pasteur v. Skevofilax*, 396 Md. 405, 433, 914 A.2d 113, 130

26

(2007)). The trial court disregarded its requirement that Perry establish a foundation when it allowed Perry to elicit testimony about notes on a fax sheet. These notes demonstrated that ACS had knowledge of Higher Power's failure to produce proof of insurance after two requests. Maggio's testimony regarding ACS's dealings with Higher Power/Johnson was germane to whether an employer-employee relationship existed. Over ACS's objection, however, the trial court allowed Maggio to read into the record notes on the fax cover sheet *before* Perry elicited testimony about the nature of ACS's dealings with Higher Power/Johnson.[14] By allowing the evidence to be presented in a sequence that violated its own prerequisite, the court abused its discretion.

**Prejudicial Effect of Admitting Inadmissible Evidence of Lack of Insurance**

Even where evidence is wrongly admitted, under Maryland Rule 5-103(a), "[e]rror may not be predicated upon a ruling that admits . . . evidence unless the party is prejudiced by the ruling." ACS argues that the admission of evidence prejudiced the jury's assessment of liability and damages because liability for the cause of the accident and Johnson's alleged agency relationship with ACS were in dispute. ACS reasons that because lack of liability insurance was not the proximate cause of the injury, that evidence unfairly prejudiced the jury's assessment of liability. As discussed above, we agree there was no causal relationship between the evidence of liability insurance or lack thereof and Perry's injuries. We emphasize

---

[14] The court did not find there was enough evidence to establish a foundation as to ACS and Johnson's employment relationship until after Maggio's testimony and cross-examination.

that this result does not create a presumption of prejudice —there is prejudice only if the error complained of was not harmless error.

Next, ACS contends that the admission of evidence of insurance was prejudicial because it, in violation of Rule 5-411, suggested to the jury that ACS was the only insured defendant. Accordingly, ACS maintains, Perry would only receive compensation for his injuries if the jury found ACS liable. Because ACS did not point to any facts to support this contention,[15] we agree with the trial court that ACS's argument is flawed. The only way the jury would know that ACS was insured is if evidence of its insurance had been admitted. ACS also states that the trial court acknowledged the problems that could arise from admitting the evidence of lack of insurance when it stated:

> I think part of what you said is a hundred percent correct because really before the jury can reach a verdict on the negligent hiring they first have to reach a verdict on the negligence. If the jury finds [Johnson] was not negligent in the operation of that vehicle, then obviously . . . . how could there be a negligent hiring. But the two are being tried together . . . . So that's the issue I have is that I think it's relevant to the hiring count, the negligent hiring count, but not particularly to the negligence.

---

[15] ACS cites *Morris v. Weddington*, 320 Md. 674, 579 A.2d 762 (1990) for this proposition. In *Morris,* after the jury heard the defendant was uninsured, the jury award to the plaintiffs was *significantly below* the amount of damages proven during trial. 320 Md. at 681, 579 A.2d at 765. Based on these objective facts, this Court held that "the mere mention of the lack of [] insurance so contaminated the trial that the motion for mistral should have been granted." *Id.* An application of *Morris* to the present case yields a conclusion counter to ACS's assertion because here, evidence of lack of insurance would have been prejudicial if the jury gave Perry a *lesser* award than what he proved. Neither party asserts that Perry received a lower award than what was proven at trial.

28

Despite this recognition, ACS notes that the trial court failed to give a curative instruction to the jury, an instruction, we note that all parties neglected to request timely. ACS further notes that the trial court failed to avoid prejudice by not taking action under Rules 2-502[16] or 2-503(b).[17] ACS's brief before this Court merely cites these rules to support its statement that the trial court did not take steps to avoid the prejudice resulting from admission of the evidence of insurance. Because ACS does not explain how the trial court's action under these rules would have avoided prejudice, we find the argument unpersuasive.

Concluding that the admission of the evidence that Johnson lacked insurance coverage was prejudicial, the Court of Special Appeals cited *Derrick v. Rock*, 236 S.W.2d 726, 729 (Ark. 1951), where "the Supreme Court of Arkansas recognized that, when 'there are two or more defendants it is improper to show that one of them is not protected by insurance, and the

---

[16] Maryland Rule 2-502 is an expansive rule and it states:

> If at any stage of an action a question arises that is within the sole province of the court to decide, whether or not the action is triable by a jury, and **if it would be convenient to have the question decided before proceeding further**, the court, on motion or on its own initiative, may order that the question be presented for decision in the manner the court deems expedient. In resolving the question, the court may accept facts stipulated by the parties, may find facts after receiving evidence, and may draw inferences from these facts. The proceedings and decisions of the court shall be on the record, and the decisions shall be reviewable upon appeal after entry of an appealable order or judgment.

(emphasis in brief).

[17] Maryland Rule 2-503(b) states: "In furtherance of convenience or to avoid prejudice, the court, on motion or on its own initiative, may order a separate trial of any claim, counterclaim, cross-claim, or third-party claim, or of any separate issue, or of any number of claims, counterclaims, cross-claims, third-party claims, or issues."

admission of this evidence was reversible error because the jurors['] minds likely were not indifferent to this fact in determining liability." *Asphalt & Concrete Servs., Inc.*, 221 Md. App. at 266, 108 A.3d at 577. The Court of Appeals of Georgia has similarly recognized that evidence of a defendant's liability insurance coverage "is not admissible in the trial of an action in tort, and it is the general rule that such evidence is not only irrelevant and immaterial but harmful and prejudicial." *McRee v. Atlanta Paper Co.*, 65 S.E.2d 832, 832 (Ga. App. Ct. 1951). This Court has also discussed the prejudicial effect that the admission of irrelevant and immaterial evidence may have on a jury's determination of the issues in a case. In *Balt. Belt R.R. Co. v. Sattler*, 105 Md. 264, 270, 65 A.752, 754 (1907), the Court concluded that in a cause of action for trespass, evidence of defendant Baltimore Belt Railroad Company's violation of certain ordinances is "not only wholly irrelevant and immaterial, but would tend to prejudice the defendants in the trial of the real issues involved." It explained that violation of certain ordinances is evidence of breach of duty in negligence, a cause of action not raised in the pleadings. *Id*.

As described previously, in the present case, evidence of lack of insurance was irrelevant and immaterial to the claim of negligent hiring. Because references to Johnson's lack of insurance coverage were not stricken from the record, the admission of that evidence probably influenced the jury in its determination of liability, resulting in prejudice to ACS.

All parties and the trial court agreed that the evidence of lack of insurance was not admissible to establish the claim of ordinary negligence. The absence of an instruction to the

jurors to disregard the evidence of lack of insurance and discount its relevance to the question of ACS's liability makes it highly probable that the jury considered this evidence in violation of Rule 5-411's prohibition against admitting evidence of liability insurance or lack thereof for "the issue [of] whether the person acted negligently or otherwise wrongfully." When multiple individuals testified that ACS hired Johnson in violation of its company policy—ACS failed to verify Johnson's insurance coverage—this greatly increased the likelihood that the jury improperly inferred fault, as a result of the irrelevant evidence of Johnson's lack of insurance coverage, and considered that evidence in finding ACS liable under the theory of *respondeat-superior.* Evidence that ACS failed to verify Higher Power/Johnson's insurance coverage was not probative of ACS's control of Johnson's on-the-job performance, which is crucial in determining an alleged employer's liability under *respondeat-superior*.[18] Therefore, the admission of such evidence was highly prejudicial to ACS because its consideration had no purpose but to lead the jury to draw impermissible inferences as to liability.

As to the negligent hiring claim, the court explained to the parties, but not the jury, that the evidence of insurance was limited to the purpose "of the negligent hiring and whether

---

[18] The trial court instructed the jury on the following five elements to be considered in determining the existence of an employment relationship: (1) the power to select and hire the employee; (2) the payment of wages; (3) the power of discharge; (4) the power to control an employee's conduct; and (5) whether the work is part of the regular business of the employee. The court noted that "[t]he most important test in determining whether an employment relationship exists is whether the employer has the right to control or direct the manner of work."

31

a reasonable hirer would have determined that and acted accordingly." It further noted that "there might be a curative instruction right now" because the evidence was only admissible for the negligent hiring claim if the jury found "Johnson, II was an agent or an employee" of ACS. The court did not give this instruction or any other instruction to the jury to disregard the evidence of lack of insurance. Absence of such an instruction leaves a void in which the implication arises that the jury considered the evidence of lack of insurance to be relevant to the issues of duty, breach, causation, and damages. For reasons previously discussed, this was an inaccurate application of the law.

## CONCLUSION

The evidence of lack of insurance was brought up repeatedly during trial. The testimony of Burt Maggio and Samantha Mentzer highlighted the fact that ACS hired Higher Power/Johnson despite Higher Power's failure to submit proof of insurance after two requests, in violation of ACS's internal policy. As a matter of law, ACS's apparent negligence in hiring Higher Power/Johnson to haul asphalt without verifying that Higher Power maintained liability insurance was not a proximate cause of Perry's injuries. Consequently, the court's admission of this evidence was an error. Because the determination of liability was a prime issue in the case and the jury was not instructed to disregard the evidence of lack of insurance in reaching its verdict, there is a reasonable probability that the jury considered the irrelevant evidence in finding ACS liable for Perry's injuries. As a result, we agree with the Court of Special Appeals and conclude that a new trial is warranted.

32

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY MORAN PERRY.**