*Andrea Jo Hancock, et al. v. Mayor & City Council of Baltimore, et al.*, No. 57, September Term, 2021.

**LABOR AND EMPLOYMENT – NEGLIGENCE – NEGLIGENT HIRING OR RETENTION OF INDEPENDENT CONTRACTOR**

One who hires an independent contractor is not liable to an employee of that contractor for injuries caused by the contractor's negligence in performing the work for which it was hired.

**LABOR AND EMPLOYMENT – NEGLIGENCE – CONTRACTORS AND SUBCONTRACTORS – DUTY OF CARE**

The duty of a contractor or subcontractor on a construction job to exercise due care to provide for the protection and safety of the employees of other contractors or subcontractors is owed with respect to conditions that the contractor or subcontractor creates or over which it exercises control.

Circuit Court for Baltimore City
Case No. 24-C-20-000676
Argued: May 9, 2022

IN THE COURT OF APPEALS

OF MARYLAND

No. 57

September Term, 2021

_____

ANDREA JO HANCOCK, et al.

v.

MAYOR AND CITY COUNCIL OF
BALTIMORE, et al.

_____

Fader, C.J.,
Watts,
Hotten,
Booth,
Biran,
Eaves,
Raker, Irma S.
    (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Fader, C.J.

_____

Filed: August 15, 2022

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

This appeal arises from the tragic death of 20-year-old Kyle Hancock, who was buried alive while working at an excavation site. At the time, Mr. Hancock was a laborer employed by R.F. Warder, Inc. ("Warder"), an independent contractor hired by the Mayor and City Council of Baltimore ("Baltimore City" or the "City") to perform the excavation work. Also on site at the time was Keith Sutton, the sole member and employee of Sutton Building Solutions, LLC ("SBS"; collectively with Mr. Sutton, "Sutton"). SBS was a subcontractor to Warder.

Mr. Hancock's mother and the personal representatives of his late father's estate (collectively, the "Hancocks")[1] filed a survivorship and wrongful death action in which they sought damages arising from Mr. Hancock's death. According to the complaint, Warder violated numerous laws, regulations, and industry safety standards in performing the excavation work and, as a result, the excavation caved in and killed Mr. Hancock. However, barred by Maryland's workers' compensation laws from bringing negligence claims against Warder, the Hancocks brought their claims against only Baltimore City and Sutton. The Hancocks alleged that Baltimore City was liable because it failed to exercise reasonable care in hiring Warder, and that Sutton was liable because Mr. Sutton recognized the dangerous condition of the excavation site but failed to warn Mr. Hancock of the danger.

---

[1] The Hancocks, the plaintiffs below and the petitioners in this Court, are Andrea Jo Hancock (Mr. Hancock's mother), individually and as personal representative of the estate of Kyle Hancock; and Jennifer and Courtney Hancock (Mr. Hancock's stepmother and sister, respectively) as co-personal representatives of the estate of Kenneth Hancock (Mr. Hancock's late father). Kenneth Hancock died after Mr. Hancock's death but before the lawsuit was filed.

The circuit court granted the defendants' respective motions to dismiss the complaint, and the Court of Special Appeals affirmed. Both courts concluded that although the City had a duty to exercise reasonable care in hiring Warder to perform the excavation work, that duty did not extend to Warder's own employees who were engaged in that work. The courts also determined that absent any allegation that Sutton had created the dangerous worksite condition or exercised control over it, Sutton did not have a legally enforceable duty to warn Mr. Hancock of the hazard.

We will affirm the well-written and well-reasoned decision of the Court of Special Appeals on both issues and hold that under the common law of Maryland: (1) one who hires an independent contractor is not liable to an employee of that contractor for injuries caused by the contractor's negligence in performing the work for which it was hired; and (2) the duty of a contractor or subcontractor on a construction job to exercise due care to provide for the protection and safety of the employees of other contractors or subcontractors is owed with respect to conditions that the contractor or subcontractor creates or over which it exercises control.

## BACKGROUND

### *The Underlying Incident*

We adopt the Court of Special Appeals' concise statement of facts concerning the underlying incident, which was drawn from the complaint:[2]

---

[2] Because this appeal arises from the grant of a motion to dismiss, the factual recitation is based on the allegations of the complaint. *See Wheeling v. Selene Fin. LP*, 473 Md. 356, 374 (2021).

2

In 2014, [Baltimore City] and [Warder] entered into a contract for Warder to perform repairs and maintenance for the City's plumbing and heating systems (the "Contract"). Appellee [SBS] was Warder's designated minority contractor under the Contract at all times relevant to this case.[] [3]

Pursuant to the Contract, on May 29, 2018, the City contacted Warder to unclog a pipe at the Clifton pool. The next day, Kyle Hancock[] and Kenneth Walko, a journeyman plumber at Warder, went to the jobsite to assess the problem. Mr. Walko determined that the clog was likely caused by a collapsed pipe. As a result, the job was more complicated than originally anticipated, and Mr. Walko concluded that a rig would be necessary to excavate the area to reach the collapsed pipe. Warder assigned its Technical Services/Project Manager, Joseph Hren, to supervise the project. Mr. Walko told Mr. Hren that he anticipated that the excavation would need to be approximately 15 feet deep.

---

[3] We take judicial notice that since February 2017, SBS has been certified with the Maryland Department of Transportation as a minority business enterprise ("MBE"), small business enterprise ("SBE"), and disadvantaged business enterprise ("DBE"). *See* Md. Dep't of Transp., Office of Minority Business Enterprise, *Certification Management System*, https://marylandmdbe.mdbecert.com, *archived at* https://perma.cc/P382-W99N. An MBE is "any legal entity, except a joint venture, that is: (1) organized to engage in commercial transactions; (2) at least 51% owned and controlled by 1 or more individuals who are socially and economically disadvantaged; and (3) managed by, and the daily business operations of which are controlled by, one or more of the socially and economically disadvantaged individuals who own it." Md. Code Ann., State Fin. & Proc. § 14-301(f) (2021 Repl.). "The term 'socially and economically disadvantaged individuals' includes, among others, individuals who are women, regardless of race or ethnicity, and/or African-American." *Doe v. Alt. Med. Md., LLC*, 455 Md. 377, 384 n.3 (2017) (citing State Fin. & Proc. § 14-301 (k)(1)(i)). MBE, SBE, and DBE programs are intended to protect the interests of socially and economically disadvantaged business owners by ensuring their inclusion in government contracting and procurement as both prime contractors and subcontractors. *See* Code of Md. Reguls. ("COMAR") 21.11.03.01. Under such programs, participating State agencies "set specific minority participation goals" on government contracts "to assure that an award of a contract is not made until a prime contractor has met the established MBE goal(s) by subcontracting with a certified small, minority, or women-owned firm(s), or has demonstrated a good faith effort to meet those goal(s)." Md. Governor's Office of Small, Minority & Women Business Affairs, *Overview*, https://gomdsmallbiz.maryland.gov/Pages/mbe-Program.aspx, *archived at* https://perma.cc/BK6S-32CZ.

Later that same day (May 30), Mr. Walko spoke with Wallace Stephenson, the Facility Maintenance Coordinator for the Baltimore City [Department of] Recreation and Parks, about the plan to excavate the site. Mr. Stephenson approved this course of action without first inquiring "about R.F. Warder's and/or SBS' experience digging excavations and never determined whether R.F. Warder and SBS had the requisite knowledge, education and experience to dig the required excavation."

The repair began on June 4, 2018. Kevin "Pat" Owens, a journeyman plumber at Warder, was assigned the task of operating the excavator. That afternoon, Mr. Owens used the excavator to dig while Mr. Walko used a bobcat to move the displaced dirt. By the end of the day, the excavation was eight feet deep, 20 feet long, and 15 feet wide.

Early the next morning, Mr. Stephenson toured the jobsite with Mr. Walko and [Mr. Hancock]. As they walked around the excavation site, Mr. Walko told Mr. Stephenson not to go "too close to a certain area" because the ground was very soft and had been breaking apart. Several hours later, Mr. Hren called [Mr.] Sutton to work on the jobsite, and informed him that "they had a big project going on involving an excavation."

Shortly thereafter, Mr. Owens moved the excavator away from the hole, and decided "that the crew would need to enter the hole to dig a better channel for water that was leaking from a pipe that was broken during the excavation process."

At approximately 1:15 p.m., Mr. Walko was the first person to enter the excavation. At that point, the excavation was at least 15 feet deep, and at ground level, it was approximately 40 feet long, and 24 feet wide. The west side of the excavation was sloped and the east side was nearly vertical. As a result, the bottom of the excavation was only ten to twelve feet long and six to eight feet wide.

Mr. Owens and [Mr. Hancock] joined Mr. Walko in the excavation and began digging around the pipe with hand shovels. Mr. Sutton arrived at approximately 1:45 p.m. and was updated on the job by Warder's crew. Mr. Sutton was instructed to "assist with the excavation, including clearing the dirt around the crushed pipe at the bottom of the excavation." [Mr. Hancock] was digging on the east side of the excavation—the side that wasn't sloped. Mr. Sutton "was to dig on the west end of the excavation," the sloped side. Mr. Sutton looked at the site and stated "out loud, but to no one in particular, that this was not safe." Nobody responded to his comment. Mr. Sutton proceeded to enter the excavation

4

using the ramp on the west side. "Despite recognizing the dangerousness of the situation, including the unsafe nature in which the excavation had been dug and the significant risk that the east wall that was nearly vertical could collapse," Mr. Sutton took no action to stop the work "and/or advise [Mr. Hancock] to exit the excavation until all applicable laws, regulations, industry standards and the standard of care regarding excavations had been met and the danger had been eliminated." Instead of taking such action or speaking up, "Mr. Sutton consciously decided that he was going to stay a safe distance away from the vertical east wall so that if it collapsed, he would not be hurt."

At approximately 3:15 p.m., Mr. Sutton finished the work on his side and was looking at [Mr. Hancock] when he noticed the vertical east wall starting to give way. He yelled for [Mr. Hancock] to run. [Mr. Hancock] turned around, recognized the danger, and tried to run. Unable to escape, [Mr. Hancock] was buried alive under tons of dirt and debris from the collapse of the east wall. Mr. Sutton called 911, and others jumped into the excavation and attempted to dig by hand to rescue [Mr. Hancock], but after the fire department arrived, they were instructed to stop their efforts because the excavation was unsafe. [Mr. Hancock] was discovered approximately ten hours later, 18 feet into the excavation. He died of asphyxiation.

*Hancock v. Mayor & City Council of Baltimore*, No. 440, Sept. Term, 2020, 2021 WL 4496505, at *1-2 (Md. Ct. Spec. App. Oct. 1, 2021).

### *The Complaint*

In February 2020, the Hancocks filed a four-count complaint in the Circuit Court for Baltimore City against the City and Sutton. Counts I through III were survivor actions against, respectively, the City, Mr. Sutton, and SBS. Count IV was a wrongful death action against all three defendants. The Court of Special Appeals summarized the claims as follows:

As to the negligence count against the City, the complaint alleged that the City had a duty to [Mr. Hancock] to use reasonable care in hiring a qualified contractor to properly and safely perform the excavation work. The complaint alleged the "laws, regulations and [applicable] industry

5

standards" for excavations of this kind required some combination of "sloping, shoring, benching and/or the use of trench boxes" to prevent a calamity of the sort that claimed [Mr. Hancock's] life. These standards, the complaint alleged, all of which were designed to protect "a specific class of persons which included [Mr. Hancock]," were all violated, and as a result the east wall caved in and killed [Mr. Hancock].

The complaint alleged that Warder was not competent and qualified to perform the excavation work safely and properly, and that the City knew this. The complaint also alleged that, on a prior job for the City, the City's supervisor, John Habicht, noticed that Warder had committed the same mistake at an excavation of seven feet. Mr. Habicht knew that the failure to use cave-in protection was a violation of "applicable safety rules and industry standards . . . but nonetheless hired [Warder] to perform the excavation at the Clifton Park pool which resulted in [Mr. Hancock's] death."

Thus, the complaint alleges, the City breached its duty to [Mr. Hancock] by failing to vet Warder to ensure it was qualified for the job and by failing to select and/or hire a competent and qualified contractor to properly and safely do the job. The complaint alleges that as a result of the City's negligent hiring of Warder and Warder's predictable negligence at the excavation site, [Mr. Hancock] suffered pre-impact flight, severe and conscious physical pain and suffering, severe mental anguish, injuries, and suffocation.

As to Sutton, the complaint alleged that Mr. Sutton failed to ensure and maintain safety at the jobsite, failed to make sure the work was performed in a safe and appropriate manner, and failed to make sure that Warder had the requisite knowledge, training, and experience to perform the work. The complaint alleged that Mr. Sutton was liable for his own negligence, for which SBS was vicariously liable.

*Id.* at *3.

### The Motions to Dismiss and the Circuit Court's Ruling

The City moved to dismiss the complaint for failure to state a claim upon which relief could be granted. The City acknowledged that it had a duty under § 411 of the

6

Restatement (Second) of Torts (1965),[4] which this Court had previously adopted, to hire competent contractors, and that that duty extended to "third persons." However, the City argued that the duty did not extend to employees of an independent contractor that created the dangerous condition that resulted in the injury. The Hancocks opposed the motion and argued that the duty to hire competent contractors extends to all third persons, including employees of the contractors.

Sutton also moved to dismiss the Hancocks' complaint on the ground that they did not owe a duty in tort to Mr. Hancock. Relying on *Parker v. Neighborhood Theatres, Inc.*, 76 Md. App. 590, 596 (1988), Sutton contended that the proper legal "standard for assessing the liability of one subcontractor to an employee of another subcontractor for an injury on a multi-contractor worksite" is whether the contractor "created or controlled" the dangerous condition that caused the employee's injury, and that Sutton could not be liable for Mr. Hancock's death because they neither created nor controlled the condition that killed him. The Hancocks countered that the proper legal standard for determining when a contractor has a duty to warn a fellow contractor of a dangerous condition, following this Court's decision in *Finkelstein v. Vulcan Rail & Construction Co.*, 224 Md. 439 (1961), is whether the contractor knew or should have known of the condition.

The circuit court granted both motions. The court held that the City was entitled to dismissal because the duty of one who hires an independent contractor to exercise due care in hiring does not extend to the employees of the independent contractor. The court also

_____

[4] All references to the Restatement in this opinion are to the Restatement (Second) of Torts (1965).

7

held that Sutton did not owe a duty in tort to Mr. Hancock because they did not create or control the hazard that killed him.

### *The Court of Special Appeals' Opinion*

The Hancocks timely appealed to the Court of Special Appeals, which affirmed in an unreported opinion. *Hancock*, 2021 WL 4496505, at *1. In addressing the claim against the City, the court engaged in a detailed analysis of this Court's decision in *Rowley v. Mayor & City Council of Baltimore*, 305 Md. 456 (1986), on which both parties had relied. In *Rowley*, as summarized by the intermediate appellate court, this Court determined that an owner of a premises who hired an independent contractor to make certain repairs on the premises was not vicariously liable to the employees of the contractor for harm that arose "from the failure of the contractor to make those repairs." *Hancock*, 2021 WL 4496505, at *10 (quoting *Rowley*, 305 Md. at 474). Although *Rowley* concerned a different provision of the Restatement that addresses vicarious liability of a premises owner, the Court of Special Appeals nonetheless found that the case "provides a helpful analytical framework" for resolving the Hancocks' case. *Hancock*, 2021 WL 4496505, at *7. Relying on *Rowley* and the majority position adopted in cases from other jurisdictions, the court concluded that the City's duty to exercise reasonable care in hiring Warder did not extend to Mr. Hancock. *Id.* at *12.

With respect to the claims against Sutton, the intermediate appellate court agreed with the circuit court that the proper legal standard for determining whether a contractor has a duty to warn the employee of a fellow contractor of a dangerous condition is whether the contractor "created or controlled" the condition. *Id.* at *13-16. Because the Hancocks'

8

complaint did not allege that Sutton had created or controlled the hazardous condition that killed Mr. Hancock, the Court of Special Appeals affirmed. *Id.* at \*17.

The Hancocks filed a petition for writ of certiorari seeking review of both legal determinations made by the Court of Special Appeals. We granted the petition, *Hancock v. Mayor & City Council of Baltimore*, 477 Md. 150 (2022), and will affirm in all respects.

## DISCUSSION

We review the grant of a motion to dismiss to determine "whether the trial court was legally correct." *D.L. v. Sheppard Pratt Health Sys., Inc.*, 465 Md. 339, 350 (2019) (quoting *Blackstone v. Sharma*, 461 Md. 87, 110 (2018)). We do so without deference to the trial court or the intermediate appellate court and "assume the truth of all relevant and material facts that are well pleaded and all inferences which can reasonably be drawn from those pleadings." *Wheeling v. Selene Fin. LP*, 473 Md. 356, 374 (2021) (quoting *Barclay v. Castruccio*, 469 Md. 368, 373 (2020)). A motion to dismiss may be granted only "where the allegations presented do not state a cause of action." *Wheeling*, 473 Md. at 374; *see also* Md. Rule 2-322(b)(2).

### I. GENERAL PRINCIPLES CONCERNING THE EXISTENCE OF A DUTY IN TORT

To state a cause of action "based in negligence, such as negligent hiring, 'a plaintiff must prove the existence of a duty owed by a defendant to [the plaintiff] (or to a class of which [the plaintiff] is a part), a breach of that duty, a legally cognizable causal relationship between breach of duty and the harm suffered, and damages.'" *Perry v. Asphalt & Concrete Servs., Inc.*, 447 Md. 31, 51 (2016) (quoting *Cramer v. Hous. Opportunities Comm'n of Montgomery County*, 304 Md. 705, 712 (1985)). Here, we are concerned

9

primarily with the first element in assessing (1) whether the City owed Mr. Hancock a duty of care in retaining the services of his employer, Warder, and (2) whether Sutton owed Mr. Hancock a duty to warn him of the dangerous condition created by Warder once Sutton became aware of that danger.

"The determination of whether a duty exists is a legal conclusion that this Court reviews" without deference. *Steamfitters Loc. Union No. 602 v. Erie Ins. Exch.*, 469 Md. 704, 727 (2020) ("*Steamfitters*"). A duty enforceable in tort—often called a "tort duty," *Jacques v. First Nat'l Bank of Md.*, 307 Md. 527, 533-34 (1986)—is "an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another," *Steamfitters*, 469 Md. at 727 (quoting W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts* § 53 (5th ed. 1984) ("Keeton")). "There is no precise formula for determining the existence of a duty of care between two parties." *Griesi v. Atl. Gen. Hosp. Corp.*, 360 Md. 1, 12 (2000). "At its core, the determination of whether a duty exists represents a policy question of whether the specific plaintiff is entitled to protection from the acts of the defendant." *Gourdine v. Crews*, 405 Md. 722, 745 (2008); *see Jacques*, 307 Md. at 533 (describing "duty" as "an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection" (quoting Keeton, § 53 at 357)). In determining whether to recognize a duty, it is therefore "important to consider the policy reasons supporting a cause of action in negligence. The purpose is to discourage or encourage specific types of behavior by one party to the benefit of another party." *Patton v. U.S. Rugby Football*, 381 Md. 627, 637 (2004) (quoting *Valentine v. On Target, Inc.*, 353 Md. 544, 550 (1999)).

10

There is "no universal test" for determining when the law will recognize a tort duty. *Jacques*, 307 Md. at 533 (quoting Keeton, § 53 at 357). "A tort duty does not always coexist with a moral duty," and it does not always follow the creation of a duty imposed by statute or by contract. *Jacques*, 307 Md. at 534. In *Jacques*, we identified "two major considerations" in determining whether to recognize a tort duty in a particular context as "the nature of the harm likely to result from a failure to exercise due care, and the relationship that exists between the parties." *Id.* Which of those considerations receives more weight depends on whether the "failure to exercise due care creates a risk of economic loss only"—in which case "courts have generally required an intimate nexus between the parties" for there to be tort liability—or whether the risk "is one of personal injury"—in which case "the principal determinant of duty becomes foreseeability." *Id.* at 534-35.

We have also consistently identified the following variables we look to, "among other things," in considering whether to recognize a tort duty:

> [T]he foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered the injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and the consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost and prevalence of insurance for the risk involved.

*Steamfitters*, 469 Md. at 728 (block quote from *Ashburn v. Anne Arundel County*, 306 Md. 617, 627 (1986)); *see also* Dan B. Dobbs, *The Law of Torts* § 255 (2000) (noting that "the relationship of the parties" itself can be added as an additional factor in considering the existence of a duty). "Among these factors, foreseeability weighs the heaviest." *Steamfitters*, 469 Md. at 728.

11

Because "[o]ne cannot be expected to owe a duty to the world at large to protect it against the actions of third parties," our focus is not on whether the alleged tortfeasor owed a duty in the abstract or to the public, but whether the alleged tortfeasor owed a duty specifically to the plaintiff (or a class of which the plaintiff is a part). *Valentine*, 353 Md. at 553. "Inherent . . . in the concept of duty is the concept of a relationship between the parties out of which the duty arises." *Id.* at 551 (quoting *Rosenblatt v. Exxon Co., U.S.A.*, 335 Md. 58, 77 (1994)). Indeed, the "[r]elationship of the parties is so pervasively important in determining existence and measure of duty that it often goes unmentioned." *Blondell v. Littlepage*, 413 Md. 96, 122 (2010) (quoting Dobbs, *The Law of Torts*, § 229).

## II. THE DUTY TO EXERCISE REASONABLE CARE IN THE HIRING OF AN INDEPENDENT CONTRACTOR DOES NOT EXTEND TO AN EMPLOYEE OF THE CONTRACTOR ENGAGED IN THE DUTIES FOR WHICH THE CONTRACTOR WAS HIRED.

One who wants to retain the services of another to perform one or more tasks generally has the choice to hire an employee or an independent contractor. *See* Restatement (Second) of Torts § 409 (1965) (defining "independent contractor" to "describ[e] any person who does work for another under conditions which are not sufficient to make him a servant of the other"). Which option is chosen has a variety of operational, financial, and legal consequences, most of which are beyond the scope of this opinion. *See generally* Stephen Fishman, *Working With Independent Contractors* 5-15 (10th ed. 2020) (discussing various consequences of using independent contractors rather than employees). For our purposes, the most important operational distinction between the employer-employee and independent contractor relationships is control. In an employment relationship, the

12

employer generally has the "right to control the details of work performance." *Employee*, *Black's Law Dictionary* 662 (11th ed. 2019); *see also Chevron, U.S.A., Inc. v. Lesch*, 319 Md. 25, 32 (1990) (observing that one criterion of an employment relationship is "the power to control the [employee's] conduct" (quoting *Keitz v. Nat'l Paving Co.*, 214 Md. 479, 491 (1957))). An independent contractor, by contrast, "retain[s] control over the manner of" performing the services provided. *Perry*, 447 Md. at 50-51; *see also Independent Contractor*, *Black's Law Dictionary* 920 (11th ed. 2019) ("Someone who is entrusted to undertake a specific project but who is left free to do the assigned work and to choose the method for accomplishing it."). Based on that distinction, "[u]nder the doctrine of *respondeat-superior*, an employer is vicariously liable for the acts of its employee, within the scope of employment, even if the employer does not commit any negligent acts." *Perry*, 447 Md. at 50. By contrast, as a general matter, "[w]hen one engages an independent contractor, one 'is not responsible for incidental negligence while such agent is conducting the authorized transaction.'" *Id.* at 51 (quoting *Gallagher's Est. v. Battle*, 209 Md. 592, 602 (1956)).

Baltimore City elected to retain the services of Warder, an independent contractor, to perform the excavation work needed to reach the collapsed pipe at the Clifton pool. Warder, in turn, engaged certain of its employees, including Mr. Hancock, to perform that work. The question before us is, in that context, whether Baltimore City owed a tort duty to Mr. Hancock, the employee of its independent contractor.

13

**A.**     **Subject to Exceptions, One Who Retains an Independent Contractor Is Generally Not Liable for Physical Harm Caused by an Act or Omission of the Contractor.**

We have previously applied the framework established by the Restatement for identifying when one who retains an independent contractor owes a tort duty to others for harm caused by the independent contractor.  *See, e.g.*, *Perry*, 447 Md. at 51; *Appiah v. Hall*, 416 Md. 533, 558-59, 562-63 (2010); *Rowley*, 305 Md. at 462.  The general rule, contained in § 409 of the Restatement, is that "the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or [the employer's] servants."  The often-cited explanation for that rule is that because "the employer has no right of control over the manner in which the work is to be done, it is to be regarded as the contractor's own enterprise, and [the contractor], rather than the employer, is the proper party to be charged with the responsibility for preventing the risk, and administering and distributing it."  *Rowley*, 305 Md. at 462 (quoting Keeton § 71 at 509); Restatement § 409 cmt. b.

The Restatement's general rule of non-liability for the negligence of an independent contractor is subject to a variety of exceptions listed in §§ 410-429.  Sections 410-415 identify exceptions to the general rule for instances of direct negligence by the principal who retains the independent contractor, including, as most relevant here, for negligent hiring or retention of the contractor (§ 411).  Sections 416-429 identify exceptions for certain types of vicarious liability for the contractor's actions or omissions.

14

Section 411 provides:

> An employer is subject to liability for physical harm to third persons caused by his failure to exercise reasonable care to employ a competent and careful contractor
>
> (a) to do work which will involve a risk of physical harm unless it is skillfully and carefully done, or
>
> (b) to perform any duty which the employer owes to third persons.

Section 411 thus makes one who retains an independent contractor liable to "third persons" for physical harm caused by the acts of the contractor "if the harm is caused by 'some quality in the contractor which made it negligent for the employer to entrust the work to [the contractor].'" *Perry*, 447 Md. at 51 (quoting Restatement § 411 cmt. b).

The critical question in this case is not whether Baltimore City owed anyone a duty to exercise reasonable care in hiring Warder, as all parties recognize that it did. The critical question here is to whom Baltimore City owed that duty and, specifically, whether Mr. Hancock fell within the class of "third persons" to whom the duty was owed. Like the Court of Special Appeals, we conclude that he did not. In doing so, we join the majority of states that have considered the issue in holding that the duty of one who hires an independent contractor to exercise due care in doing so does not extend to the contractor's employees who are engaged in the work for which the contractor is retained. Our conclusion is supported by Maryland caselaw concerning the tort of negligent hiring, the Restatement, the rationales of decisions of the majority of other states that have reached the same conclusion, and Maryland caselaw reaching the same conclusion with respect to another exception to § 409. We will explore each of those points in turn.

**B.** **In Maryland, the Tort of Negligent Hiring or Retention Generally Protects Individuals Who Are Brought into Contact with the Person Hired as a Result of the Hiring or Retention Decision.**

To prove a claim of negligent hiring or retention in Maryland, as with any other negligence claim, a plaintiff must establish that the defendant owed the plaintiff a duty, a breach of that duty, a legally cognizable causal relationship between breach of duty and the harm suffered, and damages. *Perry*, 447 Md. at 51. This Court recognized that an employer may owe a duty to its employees and to members of the public arising from its role in hiring, supervising, and retaining its employees in *Evans v. Morsell*, 284 Md. 160, 164-65 (1978) (observing that as early as 1894, the Court of Appeals had recognized "that in hiring and retaining someone, an employer owes a duty to [its] other employees and to the general public to use reasonable care"). There, we explained that an employer has a duty to make a reasonable inquiry into an employee's fitness "before hiring or retaining the employee" "[w]here an employee is expected to come into contact with the public." *Id.* at 166-67.

In addition to the existence of a duty, a "plaintiff must prove two links in the causal chain" to bring a negligent hiring claim. *Perry*, 447 Md. at 52 (quoting *Cramer*, 304 Md. at 713). "First, the plaintiff must show that the failure of an employer to undertake a reasonable inquiry resulted in the contractor's hiring." *Perry*, 447 Md. at 52. More importantly here, "even if a negligent hiring is shown, the plaintiff still must prove that the hiring was a proximate cause of the [plaintiff's] injury." *Id.* (internal quotation marks omitted) (quoting *Cramer*, 304 Md. at 713); *see also Henley v. Prince George's County*, 305 Md. 320, 333-34 (1986) (discussing the requirement of proximate cause for purposes

16

of establishing a negligent hiring claim).  The tort is thus intended to protect those persons "who would reasonably be expected to come into contact with [the contractor or employee] in [the] performance of [the contractor's or employee's] duties."  *Henley*, 305 Md. at 336.

Following *Evans*, our appellate courts have considered claims for negligent hiring in various contexts and have reiterated that an employer has an obligation "to the public to use due care in selecting and retaining only competent and careful employees." *Asphalt & Concrete Servs., Inc. v. Perry*, 221 Md. App. 235, 255-56 (2015), *aff'd sub nom. Perry*, 447 Md. at 31 (quoting *Henley v. Prince George's County*, 60 Md. App. 24, 36 (1984), *rev'd in part on other grounds*, 305 Md. at 320).  Notably, consistent with the duty and causation principles we have discussed, our appellate courts have not recognized an employer's duty to exercise care in hiring and retaining employees as extending beyond the employer's "other employees and [] the general public," *Evans*, 284 Md. at 164; in other words, those third parties who come into contact with the tortfeasor only because of the defendant's hiring or retention decision.  *See, e.g.*, *Henley*, 305 Md. at 332-33 (claim by family of a suspected trespasser who was murdered on the property against the manager of a skills program that employed the murderer); *Cramer*, 304 Md. at 715 (claim by tenant who was assaulted by the employee of a housing inspector); *Fidelity First Home Mortg. Co. v. Williams*, 208 Md. App. 180, 200 (2012) (claim by homeowner against a mortgage broker whose employee conducted a fraudulent foreclosure scheme).

Here, by contrast, Mr. Hancock came into contact with Warder through their employment relationship, not because of any act or omission of Baltimore City.  The City was not responsible for exposing Mr. Hancock to Warder.

**C.     Illustrations of the Application of § 411 Presented in the Restatement Include Only Scenarios in Which Plaintiffs Were Brought into Contact with a Contractor by the Decision to Hire or Retain the Contractor.**

The Restatement does not directly define who falls within the scope of "third persons" to whom an employer owes a duty of care. It does, however, identify the intended scope of the exception through a series of eight illustrations, none of which includes an employee of the contractor. To the contrary, all the plaintiffs identified in the scenarios are members of the public or passersby who came into contact with the contractor only as a result of the defendant's hiring or retention decision. Those include: a customer injured by the defendant's "rough and violent" collection agent (Ill. 1); a motorist injured by the negligence of a contractor hired to haul logs (Ill. 2); a motorist whose car was hit by a bus hired by a hotel owner to transport guests, as well as the injured hotel guests riding on the bus (Ills. 3 and 4); a pedestrian who was run over by a teamster hired to haul materials (Ill. 5); a pedestrian injured by a cornice falling from the defendant's house when the contractor failed to make timely repairs or was negligent in making the repairs (Ills. 6 and 7); and a motorist who was injured by falling brick from a building that abutted a public highway resulting from the substandard work of the contractor (Ill. 8). As other courts have recognized, these illustrations support the conclusion that the duty recognized in § 411 does not "extend to job site employees." *Carney v. Union Pac. R.R. Co.*, 77 N.E.3d 1, 19 (Ill. 2016); *see also Urena v. Capano Homes, Inc.*, 930 A.2d 877, 880 (Del. 2007) (observing that "none of the illustrations to Section 411 include employees of an independent contractor as 'third persons'").

18

**D.  A Majority of Other Jurisdictions Share the Position We Adopt.**

The "overwhelming majority of the courts of other jurisdictions that have addressed the question have concluded that an employee of a contractor is *not* a third person for the purposes of section 411." *Camargo v. Tjaarda Dairy*, 25 P.3d 1096, 1100 (Cal. 2001).  In summarizing the rationales of those decisions, the Supreme Court of Illinois recently stated:

> Generally, courts that have held that an employee of a contractor cannot pursue a claim under section 411 against the contractor's principal have identified the following reasons:  (1) the illustrations and comments to section 411 make no provision for such liability (*Mentzer v. Ognibene*, [ ] 597 A.2d 604, 608 ([Pa. Super. Ct.] 1991); *Payne v. Lee*, 686 F. Supp. 677, 679 (E.D. Tenn. 1988); *Chapman v. Black*, [ ] 741 P.2d 998, 1005 ([Wash. Ct. App.] 1987)); (2) the purpose of section 411, assuring a remedy to an injured person, is already satisfied when that person receives workers' compensation benefits (*Jones v. Schneider National, Inc.*, 797 N.W.2d 611, 615 (Iowa Ct. App. 2011)); (3) because the cost of workers' compensation coverage is typically included in the contractor's price for the work that the employer of the contractor pays, holding the employer liable under section 411 would effectively make the employer pay twice for the injuries to the contractor's employees (*Lipka v. United States*, 369 F.2d 288, 293 (2d Cir. 1966)); (4) it would be inequitable to impose liability on the employer for negligent hiring when the liability of the contractor, who is primarily responsible for the worker's on-the-job injuries, is limited to providing workers' compensation coverage (*Camargo*, [ ] 25 P.3d at 1101); and (5) a contractor's employees are better able to protect themselves against the negligence of an improperly hired contractor than members of the general public (*Mentzer*, 597 A.2d at 609; *Payne*, 686 F. Supp. at 679).

*Carney*, 77 N.E.3d at 17-18.[5]

---

[5] *See also Jones*, 797 N.W.2d at 616 (holding that Restatement § 411 "does not include protection for employees of an independent contractor"); *Hauptman v. WMC, Inc.*, 224 P.3d 1175, 1186 (Kan. Ct. App. 2010) (concluding that an independent contractor's employee was not a "third person" under § 411 for purposes of a wrongful death claim); *Urena*, 930 A.2d at 878 ("[W]e hold that the Restatement (Second) of Torts (1965) § 411

With the exception of the fifth point referenced in *Carney*, we find the rationale of those courts persuasive. Unlike bystanders and passersby, who may be left entirely without recourse if an independent contractor lacks the means to compensate them for injuries, a contractor's employees are covered by workers' compensation laws. Those laws implement public policy choices that (1) extend compensation for all accidental injuries arising in the course of employment regardless of fault, but also (2) limit the amount of compensation available and serve as a bar to other claims against the employer. *See Bd. of Educ. of Prince George's County v. Marks-Sloan*, 428 Md. 1, 36-38 (2012) ("With certain limited exceptions, the Workers' Compensation Act 'is a substitute for the employer's common law liability for negligence, subject to [the employer's] common law defenses,

<hr>

does not support a cause of action in favor of the employees of an independent contractor based on the general contractor's alleged failure to exercise due care in selecting the independent contractor."); *Camargo*, 25 P.3d at 1097 (holding that "an employee of an independent contractor [is barred] from bringing a negligent hiring action against the hirer of the contractor"); *Castro v. Serrata*, 145 F. Supp. 2d 835, 836-37 (S.D. Tex. 2001) (applying Texas law and holding that an employee of an independent contractor was "not a 'third party' under section 411"); *Best v. Energized Substation Serv., Inc.*, 623 N.E.2d 158, 162 (Ohio 1993) ("We find that a principal cannot be held liable by an independent contractor's employee for negligent selection of the independent contractor."); *Mentzer*, 597 A.2d at 609 ("We agree that the scope of section 411 is properly limited to claims by third persons other than employees of the negligent independent contractor itself."); *Valdez v. Cillessen & Son, Inc.*, 734 P.2d 1258, 1263 (N.M. 1987) (holding that an employee of a contractor was not a "third party" owed a duty under Restatement § 411); *Chapman*, 741 P.2d at 1005 (concluding that the trial court correctly declined to issue a jury instruction on a negligent hiring theory where the plaintiff was an employee of the contractor); *Hess v. Upper Miss. Towing Corp.*, 559 F.2d 1030, 1035 (5th Cir. 1977); (stating that several sections of the Restatement, including § 411, "cannot support the plaintiff's action because he is an employee of the independent contractor, and the sections only impose liability with respect to third parties"); *Lipka*, 369 F.2d at 292 (applying New York law and holding that New York courts would not permit employees of an independent contractor to sustain a negligent hiring claim against the principal).

and creates an absolute, but limited, liability regardless of fault[.]'" (quoting *Flood v. Merchs. Mut. Ins. Co.*, 230 Md. 373, 377 (1963))). Adopting the rule proposed by the Hancocks would alter the consequences of the workers' compensation scheme by allowing a path to tort recovery for some workers—those hired by certain entities that work as independent contractors—but not others; and to impose tort liability for worker injuries on some principals—those who hire certain independent contractors—but not others.[6] Other jurisdictions analyzing the scope of various exceptions to § 409's general rule have noted

---

[6] We say "certain independent contractors" because some principals who hire independent contractors are deemed by law to be "statutory employers" for purposes of the workers' compensation laws. A statutory employer is a principal contractor who is treated as an employer for purposes of the workers' compensation laws if: "(1) the principal contractor undertakes to perform any work that is part of the business, occupation, or trade of the principal contractor; (2) the principal contractor contracts with a subcontractor for the execution by or under the subcontractor of all or part of the work undertaken by the principal contractor; and (3) the covered employee is employed in the execution of that work." *Rodrigues-Novo v. Recchi Am., Inc*., 381 Md. 49, 57 (2004) (quoting Md. Code Ann., Lab. & Empl. § 9-508(a) (1999 Repl.)). When those conditions are met, the principal contractor assumes "'the absolute liability of an employer'" and, conversely, "an injured worker's exclusive remedy against a principal contractor is the compensation available under the Act." *Rodrigues-Novo*, 381 Md. at 58 (quoting *State, to Use of Hubert v. Bennett Bldg. Co.*, 154 Md. 159, 162 (1928)).

the arbitrariness of such a rule,[7] as well as the distorting incentives such a rule may have

on a principal's hiring decisions.[8]

A handful of jurisdictions have taken the opposite view. For example, in *Sievers v.*

*McClure*, the Alaska Supreme Court held that "the employer's duty to act reasonably in

hiring a competent contractor runs to the employees of the contractor." 746 P.2d 885, 891

(Alaska 1987). The court believed that that rule "is not unduly burdensome, as in most

cases it requires no additional effort from an employer who must act reasonably in the

selection process in any event in order to protect third parties from harm." *Id.* The court

also thought that "the rule may tend to further the goal of industrial safety by discouraging

---

[7] *See, e.g.*, *Camargo*, 25 P.3d at 1101-02 ("[I]t would be unfair to impose liability on the hiring person when the liability of the contractor, the one primarily responsible for the worker's on-the-job injuries, is limited to providing workers' compensation coverage." (quoting *Toland v. Sunland Hous. Grp., Inc.*, 955 P.2d 504, 513 (Cal. 1998))); *Vagle v. Pickands Mather & Co.*, 611 F.2d 1212, 1218 (8th Cir. 1979) ("By the same token, such a policy would create an unwarranted windfall for those employees who happen to be working for an independent contractor."); *King v. Shelby Rural Elec. Coop. Corp.*, 502 S.W.2d 659, 663 (Ky. Ct. App. 1973) ("We can see no reason why appellant, simply because he was an employee of an independent contractor, should be placed in a better position than if he had been an employee of [the principal], in which case his recovery would be limited without question to the benefits provided by the Workmen's Compensation Act. Conversely, we see no valid reason why [the principal] should be subjected to more liability simply because it engaged the services of a qualified independent contractor.").

[8] *See, e.g.*, *Tauscher v. Puget Sound Power & Light Co.*, 635 P.2d 426, 431 (Wash. 1981) (en banc) ("[T]o hold otherwise would serve to . . . discourage owners from hiring experienced independent contractors[.]"); *King*, 502 S.W.2d at 663 ("The imposition of additional tort liability upon the employer . . . would have a tendency to discourage the practice of selecting skilled independent contractors and cause employers to do the work with their own, sometimes less skilled, work force."); *Dillard v. Strecker*, 877 P.2d 371, 385 (Kan. 1994) (to allow an employee of an independent contractor to recover would "punish [employers] who seek expert assistance in an effort to avoid liability for injury").

22

the employment of contractors notorious for cutting costs at the expense of their employees' health and safety." *Id.*; *see also Bagley v. Insight Commc'ns Co., L.P.*, 658 N.E.2d 584, 587-88 (Ind. 1995) (overruling decisions of its intermediate appellate court holding that employees of independent contractors could not bring negligent hiring claims against a principal on the ground that the exceptions Indiana recognizes to the ordinary rule of no principal liability "encourage the [principal] to participate in the control of work covered by the exceptions in order to minimize the risk of resulting injuries"); *Fry v. Diamond Constr., Inc.*, 659 A.2d 241, 248 (D.C. 1995) (although not directly addressing whether employees of contractors can sue principals for negligent hiring, citing *Sievers* in remanding such a claim for further proceedings).

The Hancocks acknowledge that a majority of jurisdictions have reached a different conclusion than the one they advocate but argue that the view of the minority is more persuasive. We disagree. The view that there is little additional burden involved in extending a duty to employees of a subcontractor ignores the substantially different considerations involved in assessing risk to passersby and bystanders based on their proximity to the work being performed, on one hand, and the risks to a subcontractor's employees who are engaged to perform the work, on the other. The latter set of risks is the subject of numerous, complex, and overlapping laws and regulations at the federal, state, and local levels.[9] The argument of the Hancocks and their amici also ignores the differing

_____

[9] The many entities that regulate worksite conditions in Baltimore City, for example, include, among others, the Baltimore City Department of Housing & Community Development; the Maryland Occupational Safety and Health ("MOSH"), Division of Labor & Industry; the United States Department of Labor; and the United States

23

ability one hiring an independent contractor has to protect bystanders and passersby, who in many cases it can preclude from entering the area in which work is being done, and an independent contractor's own employees.

The Hancocks and their amici also argue that the minority view represents superior policy because it would provide additional protection for at least some workers. However, especially in view of the fact that the rule for which they advocate would provide benefits to only some workers, impose additional liabilities on only some principals, and have the potential to distort the decision-making of principals, whether to adopt that rule presents a policy question that the General Assembly is much better suited to address than this Court.

---

Occupational Safety and Health Administration ("OSHA"). Enactments related to workplace safety for employees and the public include, among others, the Occupational Safety and Health Act of 1970, 29 U.S.C. §§ 651 – 678; the Contract Work Hours and Safety Standards Act (also known as the "Construction Safety Act"), 40 U.S.C. §§ 3701 – 3708; the Maryland Occupational Safety and Health Act, Md. Code Ann., Lab. & Empl. §§ 5-101 – 5-1201; and the Building, Fire, and Related Codes of Baltimore City (2020 ed.), §§ 3301 – 3303.29 (describing requirements for "safeguards during construction," including with respect to "condition[s] that might be injurious to the general public"), *available at* https://ca.baltimorecity.gov/codes/Art%2000%20-%20Bldg,%20Fire.pdf, *archived at* https://perma.cc/EB5D-B56U. Just some federal and state regulations related to workplace safety include: 29 C.F.R. §§ 1910 – 1910.1450 (OSHA regulations); 29 C.F.R. § 1910.132 (requirements for personal protective equipment); 29 C.F.R. §§ 1910.66 – 1910.68 (requirements governing powered platforms, manlifts, and work platforms for building maintenance); 29 C.F.R. §§ 1910.21 – 1910.30 (requirements for walking-working surfaces); 29 C.F.R. §§ 1926 – 1926.1443 (the "Safety and Health Regulations for Construction"); 29 C.F.R. §§ 1926.650 – 1926.652 (excavation-specific and "protective systems" requirements); COMAR 09.12.20.01 – 09.12.20.29 (MOSH regulations); COMAR 09.12.26.01 – 09.12.26.11 (crane safety requirements); COMAR 09.12.25.02 (requirements for fall protection in steel erections); COMAR 09.12.33.01 ("Access to Information About Hazardous and Toxic Substances"); COMAR 09.12.36.03 (requirements for field sanitation); COMAR 09.12.38.01 – 09.12.38.01 ("General Industry Standard for Personnel Platforms Suspended from Cranes, Derricks and Hoists"); and COMAR 09.12.55.02 (governing safety glazing on hazardous locations).

*See Wadsworth v. Sharma*, __ Md. __, No. 40, Sept. Term, 2021, 2022 WL 2763202, at *7 (filed July 15, 2022) ("The General Assembly is best equipped to identify, consider, and reconcile competing policy interests[.]").

Like the Court of Special Appeals, *see Hancock*, 2021 WL 4496505, at *12, we find the rationale of the majority of the courts to have addressed the issue more persuasive than that of the minority.

### E.    *Rowley v. Mayor & City Council of Baltimore*, 305 Md. 456 (1986)

Although this Court has not previously had the opportunity to consider whether employees of an independent contractor are owed a duty of reasonable care in hiring by an entity that retains the contractor, we considered an analogous circumstance pursuant to related provisions of the Restatement in *Rowley v. Mayor & City Council of Baltimore*, 305 Md. 456 (1986). There, Baltimore City retained FMI, an independent contractor, to provide management and operations services at the Baltimore Convention Center. *Id.* at 460-61. Ms. Rowley, a security guard employed by FMI, was beaten, raped, and robbed while on duty at the convention center by an assailant who was able to enter the convention center due to a defective lock on a door. *Id.* at 460. Notice of the defective lock had been provided to FMI, which was responsible for repairing and maintaining it, "on a number of occasions" over the course of 11 months. *Id.* at 460-61. Ms. Rowley sued the City on the theory that it was vicariously liable for FMI's negligence. *Id.* at 461. After the Circuit Court for Baltimore City awarded judgment to the City and the Court of Special Appeals affirmed, we granted certiorari to determine "whether one who engages an independent contractor may be liable to an employee of that contractor for injuries causally related to a

25

defective condition of the premises resulting from the negligent failure of the contractor to accomplish the repairs he was directed and empowered to make by the terms of the contract." *Id.* at 459.

Ms. Rowley claimed that, as the owner of a property that was open to the public, the City "owed *to her* a non-delegable duty to maintain the premises . . . in reasonably safe condition for her use." *Id.* at 463 (emphasis added). "We agree[d] that the City had a non-delegable duty to maintain the premises in a reasonably safe condition," but disagreed that the City owed the duty to Ms. Rowley or any other employees of the independent contractor it had retained to perform that duty. *Id.* In reaching that conclusion, we observed that the imposition of vicarious liability through exceptions to the general rule embodied in § 409 of the Restatement was "designed to protect innocent members of the public,"[10] and that whether to extend those protections to employees of contractors "has been the subject of considerable comment in the courts and among the drafters of the Restatement." *Id.* at 467. However, a "majority of jurisdictions" surveyed "h[e]ld that an employer's vicarious liability does not extend to employees of independent contractors."

---

[10] The three vicarious liability exceptions particularly at issue in *Rowley* were: (1) Section 418, which provides that a "government under a duty to maintain any place in reasonably safe condition for [public use] cannot avoid liability to the public by entrusting the maintenance or repair responsibilities to an independent contractor"; (2) Section 422, which provides that a possessor of land who entrusts an independent contractor for work on buildings and other structures on the land is subject to liability "to others on or outside of the land for physical harm" caused by the unsafe condition; and (3) Section 425, which provides that "one who employs an independent contractor to maintain in safe condition land which he holds open to the entry of the public as his place of business . . . is subject to liability for physical harm caused by the contractor's negligent failure to maintain the land . . . in reasonably safe condition." *See Rowley*, 305 Md. at 466-67.

26

*Id.* We reviewed with approval the rationales employed by some of those courts (many of which echo the rationales employed by the majority of courts that have addressed the same question with respect to § 411). Those include:

- Unlike members of the public and passersby, employees of independent contractors are protected by workers' compensation laws, "under which they may recover of their employer[s] for injuries arising out of their work," and the premiums for workers' compensation coverage are ultimately paid by the principal who hires the independent contractor through incorporation into the contract price;

- That extending liability to employees of independent contractors would place them in a better position than if they had been employees of the principal who retained the contractor, with no valid reason for the distinction;

- That extending liability to employees of independent contractors would place the principal who retained the contractor in a worse position than if they had hired the employees directly, with no valid reason for the distinction; and

- That extending liability to employees of independent contractors would discourage employers from "selecting skilled independent contractors and cause employers to do the work with their own, sometimes less skilled, work force."

*Id.* at 468-71 (quoting *King*, 502 S.W.2d at 663 and discussing other cases).[11]

---

[11] In *Rowley*, we also found support for our position in a "Special Note in the Tentative Draft # 7 of the *Restatement (Second) of Torts* (1962)," which had not been adopted in the final draft. 305 Md. at 471. The Special Note explained that "as the common law developed," the responsibility for the safety of a contractor's employees was the responsibility of the contractor, rather than of those who hired the contractor. *Id.* at 471-72 (quoting Special Note at 17-18). The "one exception" to that general rule was when work was being performed "upon the defendant's land." *Id.* As a result, the Note concluded, *"when the Sections in this Chapter speak of liability to 'another' or 'others,' or to 'third persons,' it is to be understood that the employees of the contractor, as well as those of the defendant himself, are not included."* *Id.* at 472 (emphasis added in *Rowley*). Although we acknowledged that the Special Note was not formally adopted, we found it instructive, considering it "evidence . . . of the intent of the Restatement to limit an employer's liability under the exceptions." *Rowley*, 305 Md. at 472.

We ultimately concluded that the City's duty to maintain its premises in a reasonably safe condition "did not extend to the independent contractor and its employee with respect to the defects arising from the failure of the contractor to accomplish the very repairs it had undertaken to perform." *Rowley*, 305 Md. at 463.

The Hancocks contend that *Rowley* does not govern the outcome of this case because: (1) the claims brought there were vicarious liability claims, whereas the claims here are premised on Baltimore City's direct liability for negligent hiring; (2) the Court in *Rowley* expressly limited its holding to the facts of that case; and (3) in *Rowley*, the Court quoted with approval from a Washington case, *Tauscher v. Puget Sound Power & Light Co.*, 635 P.2d. 426 (Wash. 1981), which explained that one who hired an independent contractor would be liable to an employee of the contractor for negligent hiring. Although each of those points is true, and we agree that our decision in *Rowley* is not controlling, we nonetheless find the rationale employed in that decision to be analogous and persuasive here.

First, although the Hancocks are correct that *Rowley* involved vicarious liability claims and their claims here are premised on direct liability, that distinction was not the basis for the Court's holding in *Rowley*. To the contrary, in *Rowley*, we recognized that Baltimore City itself owed members of the general public "a non-delegable duty to maintain the premises in a reasonably safe condition," but held that the duty did not extend to employees of a contractor hired to perform that duty for the reasons discussed above. 305 Md. at 463. It was the relationship between the parties that caused us to hold that the duty did not extend to the plaintiff.

28

Second, the Hancocks are again correct that the Court's holding was limited to the particular facts before it, *id.* at 459 ("We hold that under the facts in this case there is no liability."), but the rationale it employed is equally applicable here, as demonstrated by how closely it hews to the rationales provided by the majority of courts that have reached the same conclusion in applying § 411. *See* Part II.D. above.

Third, the Hancocks argue that *Rowley* "recognized . . . that an employee of an independent contractor *is* a 'third person' who may bring a direct liability claim for negligent hiring." That argument is based on the Court's quotation from the Supreme Court of Washington's rationale in *Tauscher* that one "who employs an independent contractor is already liable to all third persons, including employees of the independent contractor, . . . for negligence in the hiring of an independent contractor[.]" 635 P.2d at 430. However, that statement: (1) was dicta in both *Rowley* and *Tauscher*, which did not involve a claim of negligent hiring and which reached the same conclusion this Court did in *Rowley*; (2) was not supported by either of the citations provided in the opinion;[12] and (3) for the reasons already discussed, is not persuasive.

---

[12] The full sentence in which the partial quote on which the Hancocks rely appears is: "An owner who employs an independent contractor is already liable to all third persons, including employees of the independent contractor, [1] for his or her own negligence, [2] for negligence in the hiring of the independent contractor and [3] for injuries resulting from any latent defects on the land." *Tauscher*, 635 P.2d at 430 (numbers added for easier reference). The two citations the court provided at the end of that sentence support, at least in part, the first and third points, but not the second. The first citation, *Welker v. Kennecott Copper Co.* stands for the proposition that Restatement § 414, which provides for liability of a principal of an independent contractor to the extent the principal retains control over part of the work, extends to employees of the contractor. 403 P.2d 330, 340 (Ariz. Ct. App. 1965). The second citation, § 343 of the Restatement, provides for liability of the possessor of land who has knowledge of dangerous conditions on the land. Neither citation stands

29

For all of those reasons, we hold that one who hires an independent contractor is not liable to an employee of that contractor for injuries caused by the contractor's negligence in performing the work for which it was hired. Here, Baltimore City hired Warder as an independent contractor to perform the excavation work required to reach the collapsed pipe at the Clifton pool. In undertaking that assignment, Warder brought Mr. Hancock, among other employees, and directed him to assist with the excavation work. It was thus Warder who brought Mr. Hancock to the site of the accident, not Baltimore City who brought Warder to Mr. Hancock.[13] Baltimore City therefore did not owe Mr. Hancock a duty in tort with respect to its retention of his employer, and the circuit court was correct to dismiss the Hancocks' claims against it.

## III.    A CONTRACTOR OWES A DUTY OF CARE TO AN EMPLOYEE OF ANOTHER CONTRACTOR TO WARN OF A DANGEROUS WORKSITE CONDITION IF THE CONTRACTOR CREATED OR CONTROLLED THE DANGEROUS CONDITION.

The circuit court also dismissed the Hancocks' claims against Sutton on the ground that Sutton neither created nor controlled the dangerous condition that led to Mr. Hancock's death. The Hancocks, relying on this Court's decision in *Finkelstein v.*

---

for the proposition that the principal of an independent contractor is liable to employees of the contractor "for negligence in hiring of the independent contractor."

[13] The Hancocks also contend that we should conclude that Baltimore City owed a duty to Mr. Hancock that was enforceable in tort by analyzing what they call "the usual seven-factor test for the determination of a tort duty." However, as set forth above, the seven factors the Hancocks reference are not a test but a set of variables we have identified as relevant to the decision of whether to recognize a duty in tort. *See Steamfitters Loc. Union No. 602 v. Erie Ins. Exch.*, 469 Md. 704, 728 (2020). More importantly, we have already adopted Restatement §§ 409 and 411 as accurate statements of Maryland law. *See, e.g.*, *Rowley*, 305 Md. at 462-63; *Brady v. Ralph M. Parsons Co.*, 327 Md. 275, 283 (1992) (applying Restatement § 414). Our task here was thus to determine the scope of the tort duty already recognized, not to decide whether to recognize a new tort duty.

30

*Vulcan Rail & Construction Co.*, 224 Md. 439 (1961), and the Court of Special Appeals'

decision in *Maryland Sales & Service Corp. v. Howell*, 19 Md. App. 352 (1973), argue that

a contractor on a jobsite that has knowledge of a dangerous condition to which the

employees of another contractor are exposed but unaware has a duty to mitigate or warn of

the danger, regardless of whether the contractor created or controlled the condition. In the

alternative, even if not compelled by *Finkelstein* and *Maryland Sales*, the Hancocks

contend that this Court should recognize such a duty.

Sutton contends that the Hancocks misread *Finkelstein* and *Maryland Sales*.

According to Sutton, the Court of Special Appeals correctly stated the law in *Parker v.*

*Neighborhood Theatres, Inc.*, 76 Md. App. 590 (1988), when it held that "[t]he duty owed

by a subcontractor, on a multiple-employer construction site, to employees of other

contractors does not depend on knowledge of the danger, but on whether the subcontractor

created or controlled the dangerous condition." *Id.* at 602-03 (citing *Finkelstein*, 224 Md.

at 439). In other words, Sutton argues that a fellow contractor on a jobsite does not owe a

heightened duty to warn of a hazard unless the contractor bears some responsibility for the

hazard. We agree.

In *Finkelstein*, the plaintiff, an electrician, was employed by a subcontractor

working on the construction of the Baltimore Harbor Tunnel. 224 Md. at 440. While

installing cables in the tunnel, he tripped over a bolt that was protruding above the floor of

a catwalk. *Id.* The bolt had been installed by another subcontractor, Vulcan Rail and

Construction Company. *Id.* at 440-41. The plaintiff, who had worked in the tunnel before

and "was fully aware of the presence of the bolts," sued Vulcan for negligence. *Id.* at 441. Following a trial, the court directed a verdict in Vulcan's favor. *Id.*

In affirming, we opined that "[t]he duty owed by a subcontractor on a construction contract to the employees of other contractors on the job is similar to, and no greater than, that owed by an employer to an employee or the owner of real property to an invitee on the premises." *Id.* We explained that an employer is obligated to provide its employees with "a reasonably safe" workplace, *id.*, and "the possessor of land is liable [for] harm to an invitee only if he realizes that a potentially dangerous condition of which he is or should be aware constitutes an unreasonable risk to the invitee, has reason to believe the invitee will not discover or realize the risk and fails to warn the invitee," *id.* at 442. In both cases, a contractor's duty must be considered in light of the ordinary conditions of a construction site, because "[t]he law holds no one to a higher responsibility than the fair and reasonable standard of his trade or undertaking." *Id.* at 441. Because the plaintiff did not prove that "Vulcan's method of installation was not the ordinary method customarily employed, or that it was not in accord with good practice in the trade," we determined that the court did not err in directing the verdict in favor of Vulcan. *Id.*

A dozen years later, the Court of Special Appeals applied our decision in *Finkelstein* in deciding *Maryland Sales*. There, a general contractor constructing a new roof subcontracted with Maryland Sales, which was responsible for laying a metal roof deck, welding it, and cutting holes in the roof deck for skylights, exhaust fans, and ventilators. *Maryland Sales*, 19 Md. App. at 353-54. Howell, an employee of a different subcontractor working on the project, fell through a hole in the roof that had been cut by Maryland Sales

32

and sustained injuries. *Id.* at 354. Howell sued Maryland Sales and obtained a jury verdict for negligence. *Id.*

The Court of Special Appeals affirmed. *Id.* at 357, 360. In concluding that the evidence was sufficient to support the verdict, the court considered testimony that Maryland Sales left the hole "unguarded," "with no warning to the other workmen," and without notifying the general contractor, which was not the custom in the industry. *Id.* at 356-57. The court then stated:

> A subcontractor on a construction job owes a duty to the employees of other contractors similar to the duty owed by an employer to an employee or by the owner of real estate to an invitee on the premises. Although he is not an insurer of their safety, he must exercise due care to provide for the protection and safety of those employees. *Finkelstein v. Vulcan Rail Co.*, 224 Md. 439 [ ]. This includes the duty to warn employees of any unreasonable risk which is either known to the subcontractor or that could have been discovered by reasonable inspection.

*Id.* at 357. The court concluded that evidence that Maryland Sales cut the hole through which Howell fell and left it unsecured without warning supported the jury's finding that Maryland Sales "did not exercise due care for the protection of other employees." *Id.*

Fifteen years after *Maryland Sales*, the Court of Special Appeals decided *Parker*, which arose from the construction of two wings on a theater complex. 76 Md. App. at 592. There, an employee of the general contractor on the project cut a hole in the roof and left it unguarded, covered by two unsecured sheets of plywood. *Id.* at 593. A subcontractor hired to perform masonry work then placed 20 additional sheets of plywood on the spot as a base for scaffolding. *Id.* The general contractor later directed Parker, one of its employees, to clear the plywood off the roof. As he was moving the last sheet of plywood,

33

Parker fell through the hole in the roof and dropped 30 feet. *Id.* Parker, unable to sue the general contractor who employed him, brought suit against the subcontractor and the property owner. The trial court directed judgment in favor of both defendants. *Id.*

The Court of Special Appeals affirmed and held that the subcontractor owed no duty to Parker because it "had no physical or actual control over the work area where the hole in the roof was located" and no "contractual responsibility for cutting or covering the opening." *Id.* at 602. It was, rather, the general contractor's responsibility to secure a cover on the hole.[14] *Id.* Citing *Finkelstein*, the intermediate appellate court concluded: "The duty owed by a subcontractor, on a multiple-employer construction site, to employees of other contractors does not depend on knowledge of the danger, but on whether the subcontractor created or controlled the dangerous condition." *Id.*

The Hancocks interpret *Finkelstein* and *Maryland Sales* to impose upon all contractors and subcontractors on a jobsite, duties in tort to the employees of all other contractors and subcontractors equivalent to those of an employer or property owner, regardless of any actual role in creating or controlling any hazard. The Hancocks misinterpret those decisions. As the Court of Special Appeals observed in this case,

> In both *Finkelstein* and *Maryland Sales*, there was no issue that the defendants controlled or created the alleged hazardous condition. It was the defendants' control over the hazardous condition that triggered the duty in the first place. Put simply, the issue in *Finkelstein* and *Maryland Sales* was whether the duty was breached, not whether it existed.

---

[14] The intermediate appellate court also affirmed the entry of judgment in favor of the property owner, who Parker had alleged was liable for negligence because it had retained some control over the site. *Parker*, 76 Md. App. at 602.

2021 WL 4496505, at *16.  We agree.  The courts' statements in those cases that the duty of care owed by a contractor was akin to that of an employer or premises owner were made for the purpose of identifying the extent of the duty owed, not determining whether it existed.  "In contrast, in *Parker*, the decisive issue was whether the duty existed, not whether it was breached."  *Id.* at *17.  Because the defendant had neither created nor had any control over the hazard, there was no duty owed.  *Parker*, 76 Md. App. at 602.

We agree with our colleagues on the intermediate appellate court that *Parker* is not inconsistent with *Finkelstein* and *Maryland Sales* and that it accurately reflects Maryland law.  In the absence of any involvement in creating a hazardous condition or any control over the site where the condition exists or the personnel who are responsible for it, there is no more basis for imposing a tort duty on a contractor or subcontractor who happens to also be working at the site than on any other employee or individual present.  Here, for example, Mr. Sutton played no role in creating the hazard that led to Mr. Hancock's death and he had no control over the site or the other personnel who were there.  To the contrary, based on the allegations of the complaint, he was a co-laborer alongside Mr. Hancock who happened to be a contractor.  The Hancocks and their amici do not identify any reason why Sutton's role as a contractor, rather than an employee, of Warder provides a basis for imposing any greater tort duties in this scenario.

The Hancocks raise two alternative arguments to their primary reliance on *Finkelstein* and *Maryland Sales*, neither of which has merit.  First, they argue that Sutton owed a duty to Mr. Hancock under the special relationship doctrine, pursuant to which a tort duty arises when "(a) a special relation exists between the actor and the third person

35

which imposes a duty upon the actor to control the third person's conduct, or (b) a special relation exists between the actor and the other which gives to the other a right to protection." *Pendleton v. State*, 398 Md. 447, 473 (2007) (quoting *Lamb v. Hopkins*, 303 Md. 236, 242 (1985) (in turn quoting Restatement § 315)). The Hancocks argue that a special relationship existed here because (1) SBS had influence over Warder's contract as its minority contractor, and (2) Mr. Sutton had taken steps to protect himself before the collapse and so "had a duty to take some minimal action to protect [Mr. Hancock] too." However, we fail to see how SBS's role as Warder's designated minority contractor could possibly give rise to any heightened duty of care owed to Warder's employees.[15] Nor is there merit to the assertion that a special relationship exists between anyone who takes steps to protect themselves from a hazard and anyone else who is at risk from the same hazard.

Second, the Hancocks contend that utilization of what they refer to as "the usual seven-factor test for the determination of a tort duty" supports imposing a duty on Sutton. Sutton responds that the Hancocks failed to preserve that argument by not raising it before the circuit court. Although we see no merit in Sutton's preservation claim,[16] we agree with

---

[15] Although not a basis for our decision, we also observe that the reason why Mr. Sutton was present on the scene as a contractor, rather than him or someone else being present as an employee, was to fulfill MBE program requirements. *See* footnote 3 above. It would be an odd result if the State's tort law operated to undermine its efforts to promote minority and disadvantaged businesses.

[16] This Court recognizes a distinction "between the raising of a new *issue*, which *ordinarily* is not allowed, and the raising of an additional *argument*, even by the Court, in support or opposition to an issue that *was* raised, which is allowed." *Kopp v. Schrader*, 459 Md. 494, 512 n.12 (2018). *Cf.* Md. Rule 8-131(a) ("Ordinarily, the appellate court will

36

Sutton that the non-exclusive list of "variables" "we consider, among other things," in determining whether to recognize a tort duty, *Steamfitters Loc. Union No. 602 v. Erie Ins. Exch.*, 469 Md. 704, 728 (2020), is unavailing to the Hancocks. Those variables are:

> [T]he foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered the injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and the consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost and prevalence of insurance for the risk involved.

*Id.* (quoting *Ashburn v. Anne Arundel County*, 306 Md. 617, 627 (1986)). Even accepting the Hancocks' allegation that the harm to Mr. Hancock was identified by, and thus foreseeable to, Mr. Sutton, the other variables weigh strongly against recognition of a tort duty. *See Doe v. Pharmacia & Upjohn Co., Inc.*, 388 Md. 407, 417 (2005) ("[F]oreseeability *alone* is not sufficient to establish duty."). Mr. Sutton was not responsible for the design of the excavation, he had no supervisory role over anyone who was responsible, and he had no authority to direct Mr. Hancock's work or to stop work on the job. Under the circumstances, although it is conceivable that raising a concern about the structure of the excavation with someone who did have a supervisory role at the site could have led to a different outcome, Mr. Sutton's failure to raise that concern was not *closely* connected to Mr. Hancock's injury; he does not bear legally cognizable moral blame for the incident; we fail to see how imposing liability on Sutton would prevent future

---

not decide any other *issue* unless it plainly appears by the record to have been raised in or decided by the trial court."). Here, the disputed issue is whether Sutton owed a duty in tort toward Mr. Hancock. The Hancocks have not raised a new issue on appeal.

37

harm; and the consequences of imposing on all contractors potential liability for lapses in safety committed by others outside of their control could be substantial.[17]

Ultimately, we are unwilling to place on contractors who have not accepted any contractual or supervisory responsibility for the safety of work performed by others at a jobsite—based merely on their status as contractors—a duty enforceable in tort to protect others from potential hazards that the contractors neither created nor exercised any control over. We therefore clarify that the duty of a contractor or subcontractor on a construction job to exercise due care to provide for the protection and safety of the employees of other contractors or subcontractors is owed with respect to conditions that the contractor or subcontractor creates or over which it exercises control. As to such conditions, a contractor or subcontractor's duty is "similar to, and no greater than, that owed by an employer to an employee or the owner of real property to an invitee on the premises." *Finkelstein*, 224 Md. at 441. That "includes the duty to warn employees of any unreasonable risk which is either known to the [contractor or] subcontractor or that could have been discovered by reasonable inspection." *Maryland Sales*, 19 Md. App. at 357.

Applying that standard here, we agree with the Court of Special Appeals that the circuit court did not err in granting Sutton's motion to dismiss. The complaint did not allege that Mr. Sutton or SBS directed, created, owned, or had any actual or physical control over the hazard that resulted in Mr. Hancock's tragic death. They therefore did not

---

[17] The record contains no information about the availability of insurance for such risks.

38

owe a duty enforceable in tort to warn Mr. Hancock of the danger Mr. Sutton allegedly perceived.

## CONCLUSION

In sum, we will affirm the Court of Special Appeals in all respects and hold:

1. One who hires an independent contractor is not liable to an employee of that contractor for injuries caused by the contractor's negligence in performing the work for which it was hired; and

2. The duty of a contractor or subcontractor on a construction job to exercise due care to provide for the protection and safety of the employees of other contractors or subcontractors is owed with respect to conditions that the contractor or subcontractor creates or over which it exercises control.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED; COSTS TO BE PAID BY PETITIONERS.**

The correction notice(s) for this opinion(s) can be found here:

https://mdcourts.gov/sites/default/files/import/appellate/correctionnotices/coa/57a21cn.pdf